T.C. Memo. 2003-68

UNITED STATES TAX COURT

PIETER WEYTS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10054-01.                    Filed March 12, 2003.

Pieter Weyts, pro se.

<u>Diana P. Hinton</u>, for respondent.

MEMORANDUM OPINION

POWELL, <u>Special Trial Judge</u>:  Respondent determined a deficiency of $4,270 in petitioner's 2000 Federal income tax. The issues are whether petitioner is (1) entitled to a deduction under section 162 for educational expenses, (2) entitled to an exemption under Article 21 of the Convention for the Avoidance of Double Taxation, Oct. 13, 1972, U.S.-Belg., 23 U.S.T. (Part 3) 2687; (3) entitled to a charitable contribution deduction under section 170, and (4) entitled to an education loan interest

deduction under section 221.[1]  Petitioner resided in New York, New York, at the time the petition was filed.

Background

Educational Expenses and Article 21 Exemption

Petitioner is a citizen of Belgium.  In June of 1997, petitioner graduated from Katholieke Universiteit Leuven in Belgium, where he earned a law degree.  After graduation and until the following August, petitioner worked as a legal assistant for his father, a Belgian attorney.  Petitioner was not admitted to the Belgian bar.  In Belgium, a law school graduate must work for 3 years as a "studiare" or apprentice before qualifying for admission to the bar.

In August of 1997, petitioner came to New York City to attend Columbia University School of Law (Columbia).  In May of 1998, he was awarded a Master of Laws (LL.M.) in Corporate Finance.  In July of 1998, petitioner sat for and passed the New York State bar examination.

Petitioner desired to work temporarily as an attorney in New York City.  He was advised to obtain a J.D. degree to increase his marketability in the competitive New York City legal community.  Petitioner enrolled in the J.D. program at Columbia

---

[1]    Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure.

in August of 1998. Petitioner received 1 year of credit towards his J.D. graduation requirements from his studies in the LL.M. program which would have enabled him to graduate in May of 2000. Petitioner, however, decided to enroll in a joint J.D./M.B.A. program that extended his studies for 1 more year.

During the summer of 1999, petitioner worked as a summer associate for the law firm of Kelley Drye & Warren, LLP (Kelley Drye). In July of 1999, petitioner was formally inducted into the New York State Bar. The following summer, from approximately May to August of 2000, petitioner was employed as a summer associate at the law firm of Davis Polk & Wardwell (Davis Polk). Petitioner received both monetary compensation from Davis Polk and 3 hours of class credit.

On his 2000 Federal income tax return, petitioner claimed a Schedule A itemized deduction of $36,154 for educational expenses. Upon examination, respondent disallowed the deduction.

Charitable Contribution Deduction

Sometime in 2000, petitioner paid $700 to attend a student benefit to raise money for an informal organization to allegedly aid minority student's scholarships. This amount entitled petitioner to attend a benefit at which a dinner was served. Petitioner did not attend the dinner. On his 2000 return, petitioner did not claim a charitable contribution deduction for the amount paid. Petitioner now claims that he is entitled to

deduct $620 for the gift because $80 was attributable to services rendered in the form of the dinner.

Deduction for Education Loan Interest

Before he commenced his studies at Columbia, petitioner allegedly borrowed money from a Dutch bank to finance his educational expenses. The loan was secured by the home of petitioner's parents, and his parents were guarantors on the loan. EURO 6,197 was paid as interest in 2000, and the parties agree that the dollar conversion is $5,329. Petitioner claims that he is entitled to a deduction for education loan interest under section 221.

## Discussion

Section 162 Deduction for Educational Expenses

"Expenditures made by a taxpayer in obtaining an education or in furthering his education are not deductible unless they qualify under section 162 and § 1.162-5". Sec. 1.262-1(b)(9), Income Tax Regs.; see also Boser v. Commissioner, 77 T.C. 1124, 1132 (1981). Section 162(a) limits deductions for all "ordinary and necessary expenses" to those incurred "carrying on any trade or business". The determination of whether a taxpayer is engaged in a trade or business "requires an examination of the facts in each case." Higgins v. Commissioner, 312 U.S. 212, 217 (1941). "[T]o be engaged in a trade or business, the taxpayer must be involved in the activity with continuity and regularity and that

the taxpayer's primary purpose for engaging in the activity must be for income or profit." Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). Moreover, to qualify for the deduction, the taxpayer must be established in the trade or business at the time the educational expenses are incurred. Jungreis v. Commissioner, 55 T.C. 581, 588 (1970).

The issue before the Court is whether petitioner was in a trade or business of practicing law during 2000. Admission to the bar is not tantamount to being engaged in a trade or business of practicing law. Wassenaar v. Commissioner, 72 T.C. 1195, 1199-1200 (1979). And, a law clerk who is employed in private practice while attending law school and before admission to a bar is not engaged in a trade or business of practicing law. See Johnston v. Commissioner, T.C. Memo. 1978-257.

Petitioner relies on Ruehmann v. Commissioner, T.C. Memo. 1971-157. In Ruehmann, the Court held that the taxpayer's expenses to obtain an LL.M. were deductible under section 162. Id. The taxpayer passed the State bar exam in his second year of law school. After graduation, the taxpayer worked in a law firm for a short time before starting his LL.M. studies. At the law firm, the taxpayer "was employed as a lawyer, paid the same salary as other beginning lawyers who were members of the Bar, and assigned the same type of work that other lawyers of comparable experience in the * * * Firm were assigned." Id.

Petitioner argues that he was similarly situated. He was a member of the New York State Bar while employed at Kelley Drye and at Davis Polk as a summer associate. With respect to his work at Davis Polk, however, petitioner earned 3 hours of class credit towards his J.D./M.B.A. degrees for his work at Davis Polk. Furthermore, the arrangement of being a summer associate is more indicative of an educational pursuit, rather than being engaged in a trade or business of practicing law. The title is also more indicative of being a law clerk. Indeed, petitioner testified: "I have always been a full-time student from 1997 through 2001", and he maintained a student visa throughout this period. Petitioner also failed to establish that his compensation and assignments were similar to other full-time associates at Kelley Drye and/or Davis Polk.

In sum, we believe that petitioner had an "uninterrupted continuity in his legal education." Wassenaar v. Commissioner, supra at 1199; see also Link v. Commissioner, 90 T.C. 460 (1988), affd. without published opinion 869 F.2d 1491 (6th Cir. 1989); Baker v. Commissioner, 51 T.C. 243, 247 (1968). Between 1997 and 2001, petitioner was a full-time student and earned three law degrees. Petitioner enrolled in each degree program immediately after completion of the preceding one. Petitioner was not engaged in a trade or business of being a practicing attorney.

Having decided that petitioner does not satisfy the

requirements of section 162, we need not decide whether petitioner satisfies the requirements of section 1.162-5, Income Tax Regs. Accordingly, petitioner is not entitled to a deduction for his educational expenses.

United States-Belgium Income Tax Convention Article 21 Exemption

Article 21 of the Convention for the Avoidance of Double Taxation, Oct. 13, 1972, U.S.-Belg., 23 U.S.T. (Part 3) 2687, 2704, provides:

ARTICLE 21. STUDENTS AND TRAINEES

(1)(a) An individual who is a resident of one of the Contracting States at the time he becomes temporarily present in the other Contracting State and who is temporarily present in that other Contracting State for the primary purpose of:

(i) Studying at a university or other recognized educational institution in that other Contracting State

\* \* \* \* \* \* \*

shall be exempt from tax by that other Contracting State with respect to amounts described in subparagraph (b) for a period not exceeding 5 taxable years from the date of his arrival in that other Contracting State.

(b) The amounts referred to in subparagraph (a) are:

\* \* \* \* \* \* \*

(iii) Income from personal services performed in that other Contracting State in an amount not in excess of 2,000 United States dollars * * *.

Respondent argues that petitioner is a resident of the United States and thus may not claim the Article 21 exemption because he was not "temporarily present" in the United States

with the primary purpose to pursue a course of study.

To determine residency, an alien individual is a resident of the United States for Federal income tax purposes if the individual meets the "substantial presence test". Sec. 7701(b)(1)(A)(ii). "[A]n individual meets the substantial presence test * * * if--(i) such individual was present in the United States on at least 31 days during the calendar year, and" applying a mathematical formula, was present during the current year and the preceding 2 years for 183 days or more. Sec. 7701(b)(3)(A).

However, an individual is not treated as being in the United States if the "individual is an exempt individual for such day". Sec. 7701(b)(3)(D)(i). An exempt individual is, inter alia, "a student". Sec. 7701(b)(5)(A)(iii). A student is an individual "who is temporarily present in the United States--(I) under subparagraph (F) or (M) of section 101(15) of the Immigration and Nationality Act" and "who substantially complies with the requirements for being so present." Sec. 7701(b)(5)(D)(i) and (ii).

During the year 2000, petitioner was present in the United States under subparagraph (F) of section 101(15) of the Immigration and Nationality Act, 8 U.S.C. sec. 1101(a)(15)(F)(i) (2003), commonly referred to as an (F)(1) visa. Thus, petitioner was a "student" during 2000, and was not considered to be a

resident of the United States for Federal income tax purposes. Petitioner was present in the United States with the primary purpose of studying at a university.  Accordingly, we find that petitioner is entitled to the Article 21 exemption.

Section 170 Charitable Contribution Deduction

Section 170(a) provides a "deduction [for] any charitable contribution" made to a qualified donee under section 170(c). Section 170(f) provides recordkeeping requirements for certain charitable contributions.  Any charitable contribution of $250 or more will be disallowed "unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment" prepared by the donee.  Sec. 170(f)(8)(A).  The written acknowledgment must include (1) the amount of cash contributed, (2) whether the donee organization provided any goods or services in consideration of the donation, and (3) a description and good faith estimate of the value of those goods or services.  Sec. 170(f)(8)(B).  A written acknowledgment is contemporaneous if the taxpayer obtains the statement

on or before the earlier of--

(i) the date on which the taxpayer files a return for the taxable year in which the contribution was made, or

(ii) the due date (including extensions) for filing such return.  [Sec. 170(f)(8)(C).]

Petitioner does not have a contemporaneous written acknowledgment from the donee to substantiate the contribution.

Petitioner argues, however, that we should apply the rule in
Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930), to allow the
deduction.  The Cohan rule is invoked in situations where
"Absolute certainty * * * is usually impossible and is not
necessary" and where a close approximation can be made "bearing
heavily * * * upon the taxpayer whose inexactitude is of his own
making."  Id. at 543-544.

We find the application of the Cohan rule to be
inappropriate in this case.  Section 170(f) was added by the
Omnibus Budget Reconciliation Act of 1993, Pub. L. 103-66, sec.
13172, 107 Stat. 312.  The House of Representatives proposed to
enact section 170(f) due to

> Difficult problems of tax administration [that] arise
> with respect to fundraising techniques in which an
> organization that is eligible to receive tax deductible
> contributions provides goods or services in consideration
> for payments from donors. * * * the committee believes that
> there will be increased compliance with present-law rules
> governing charitable contribution deductions if a taxpayer
> who claims a separate charitable contribution of $750[2] or
> more is required to obtain substantiation from the donee
> indicating the amount of the contribution and whether any
> goods, service, or privilege was received by the donor in
> exchange for making the contribution. * * * [H. Rept. 103-
> 111, 1993-3 C.B. 167, 361.]

To allow petitioner the charitable contribution deduction in
the circumstances here would contravene the specific statutory

---

[2]  The Senate amendment proposed to change the threshold
amount to $250.  H. Conf. Rept. 103-213 (1993), 1993-3 C.B. 393,
443.  The Senate version was later adopted in conference.  H.
Conf. Rept. 103-213, at 445, supra, 1993-3 C.B. at 361.

language and purpose of recordkeeping for contributions in excess of $250.  We find that petitioner is not entitled to a charitable contribution deduction.

Education Loan Interest Deduction Under Section 221

Deductions are a matter of legislative grace, and the taxpayer bears the burden of proving the entitlement to any deduction claimed.  See Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).  A taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions.  Sec. 6001; sec. 1.6001-1(a), (e), Income Tax Regs.

Section 221(a) provides that a deduction is allowed for an amount equal "to the interest paid by the taxpayer * * * on any qualified education loan."  Section 221(d) defines a "qualified education loan" as "any  indebtedness incurred by the taxpayer solely to pay qualified higher education expenses".

The only documentary evidence concerning the alleged educational loan is a letter from the Cooperative Rabobank West-Zeeuws-Vlaanderen U.A. addressed to P.A.E.L. Weyts (we assume petitioner) in Brugge, Belgium, stating that the interest paid on the "mortgage loan" in 2000 was EURO 6,197.28 and that the balance of the loan as of January 1, 2001, was EURO 123,946.28. The record does not include the loan agreement or any documentary evidence of when and how, if at all, petitioner paid the

interest. This is particularly troublesome because these are the type of records that would be readily available to petitioner, and petitioner's failure to provide these records leads to the inference that they would not be favorable to petitioner's case. Additionally, we are bothered by the fact that the loan was secured by a mortgage on his parents' residence. Finally, given petitioner's expenses at Columbia, it is unclear from what source of funds petitioner made any interest payments. The inferences suggest that petitioner may not have incurred or been legally responsible for the loan. Accordingly, we find that petitioner did not meet his burden of proof[3] and is not entitled to an education loan interest deduction under section 221.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>under Rule 155.</u>

---

[3] Sec. 7491(a)(1) provides that the burden of proof shall be on respondent in certain situations. This provision does not apply if the taxpayer has not maintained required records. Sec. 7491(a)(2). In the circumstances here, at a minimum, a taxpayer claiming an interest expense would be required to maintain the basic debt instrument.