T.C. Memo. 2011-153

UNITED STATES TAX COURT

E. BRUCE AND DENISE A. AGNESS DIDONATO, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10801-09.                    Filed June 29, 2011.

<u>Robert John Alter</u>, for petitioners.

<u>Marco Franco</u> and <u>Sze Wan Florence Char</u>, for respondent.

MEMORANDUM OPINION

LARO, <u>Judge</u>:  Pending before the Court are a motion and a
cross-motion for partial summary judgment under Rule 121.[1]  On
their 2004 Form 1040, U.S. Individual Income Tax Return (2004

---

[1]Unless otherwise indicated, section references are to the
applicable versions of the Internal Revenue Code, and Rule
references are to the Tax Court Rules of Practice and Procedure.
Some dollar amounts are rounded.

return), petitioners claimed a $1,870,000 charitable contribution deduction for contribution of a land conservation easement by petitioner E. Bruce DiDonato (Mr. DiDonato) to Mercer County, New Jersey (county). Respondent determined deficiencies in petitioners' 2003 and 2004 Federal income taxes of $300,324 and $309,547, and accuracy-related penalties under section 6662(a) of $60,065 and $61,909, respectively. The deficiency for 2004 arises, in part, from respondent's disallowance of the charitable contribution deduction which petitioners claimed on their 2004 return. In his motion for partial summary judgment (motion), respondent asserts that petitioners did not substantiate the reported charitable contribution in the manner required by section 170(f)(8) and section 1.170A-13(c)(2), Income Tax Regs.

Respondent made his motion on June 1, 2010. On July 7, 2010, petitioners filed an objection to the motion and their cross-motion for partial summary judgment (cross-motion). On July 26, 2010, respondent filed his response to the cross-motion. In connection with the motion and the cross-motion, we decide whether petitioners are entitled to deduct any portion of the charitable contribution which they reported on their 2004 return. We hold that they are not.

## Background

On or about July 11, 1995, Mr. DiDonato purchased two parcels of property located at 245 Cold Soil Road, Princeton, New

Jersey, for $211,690 (collectively, Schaafsma parcel).[2] The Schaafsma parcel was subdivided from a single lot, and as of July 11, 1995, could be accessed from Cold Soil Road by way of a dirt road or a prescriptive easement.[3] The Schaafsma parcel could also be accessed from Cold Soil Road by crossing over land owned by the county. Adjacent to the Schaafsma parcel was a local park owned by the county.

On May 10, 1997, the county conveyed to Mr. DiDonato for $1 a 50-foot-wide easement and right of way (full driveway) across the county's property by a Deed of Easement and Right of Way Agreement (deed of easement). The full driveway was adjacent to the Schaafsma parcel and was situated in the neighboring park;

---

[2]The grantors retained a limited life estate which expired upon the earlier of: (1) The death of both grantors; (2) the failure of the grantors to continuously reside in the house for more than 180 days; (3) destruction of a dwelling house located on the subject property (residence); or (4) the fifth anniversary of the closing date. The grantors agreed to pay monthly rent of $850 to Mr. DiDonato for each month that they resided in the residence following the fifth anniversary of the closing date.

[3]At all relevant times, Mr. DiDonato owned at least one other parcel near the Schaafsma parcel. Petitioners assert that they had a prescriptive easement over property they owned that allowed them access to Cold Soil Road. The record is not clear whether Mr. DiDonato or his predecessor in interest pursued an action in New Jersey Superior Court claiming title to real property or claiming the right to possession in lieu of an ejectment action. See J & M Land Co. v. First Union Natl. Bank, 766 A.2d 1110, 1125 (N.J. 2001). Of course unity of title to the dominant and servient tenements in Mr. DiDonato might have eliminated the prescriptive easement under the doctrine of merger. See, e.g., Landy v. Cahn, 792 A.2d 544, 554-555 (N.J. Super. Ct. App. Div. 2002).

i.e., it was parkland property. The deed of easement granted Mr. DiDonato access to the full driveway for pedestrian and vehicular ingress and egress from the Schaafsma parcel to Cold Soil Road.[4] The deed of easement was recorded on October 10, 1997.

At some point after the deed of easement was executed, Mr. DiDonato filed a lawsuit against the county in the Superior Court of New Jersey, Chancery Division, Mercer County (State court), with respect to the deed of easement. The New Jersey Department of Environmental Protection (NJDEP) intervened and moved the State court for summary judgment. Mr. DiDonato also moved the State court for partial summary judgment. The State court granted NJDEP's motion for summary judgment and declared the deed of easement void ab initio. The State court also granted Mr. DiDonato's motion for partial summary judgment, finding the county liable to Mr. DiDonato for breach of "warranties" and awarding Mr. DiDonato reasonable attorney's fees. The State court, with the consent of Mr. DiDonato and the county, appointed a special master to investigate and recommend to the State court an appropriate remedy to be awarded to Mr. DiDonato. Mr. DiDonato and the county also agreed to participate in a series of mediation sessions which were overseen by the special master. At

---

[4]Petitioners assert that the deed of easement was merely an expansion of an existing easement, the purpose of which was to provide Mr. DiDonato with sole and exclusive use of the driveway and to prevent the public from accessing the driveway.

the conclusion of the mediation sessions, Mr. DiDonato and the county entered into a Memorandum of Settlement (settlement agreement) on August 27, 2004. That settlement agreement set forth the terms and conditions to resolve the lawsuit between Mr. DiDonato and the county.

Under the settlement agreement, the county agreed to convey a 35-foot-wide portion of the driveway (partial driveway) to Mr. DiDonato in fee simple. The remaining 15-foot-wide portion of the driveway was to be held by the county in fee simple to allow pedestrian and equestrian traffic entry into the neighboring park. Upon conveyance of the partial driveway interest to Mr. DiDonato, Mr. DiDonato agreed "to limit his use of the Schaafsma parcel to a single family residence, thereby giving up any and all development rights to said property." The county agreed to "provide written acknowledgment, in form and substance acceptable to [Mr.] DiDonato, of a donation to the county of [Mr.] DiDonato's development rights in the Schaafsma parcel." Mr. DiDonato also agreed to "pay for all property conveyed to him in fee simple through a donation to the Green Acres Fund".[5] The amount of the donation was a percentage of the value of the driveway commensurate with the partial driveway interest conveyed to Mr. DiDonato. Most if not all of the substantive rights and

---

[5]We understand the Green Acres Fund to be the Garden State Preservation Trust (GSPT). See N.J. Admin. Code sec. 7:36-26.6(i) (2011).

obligations under the settlement agreement were conditioned upon receipt of the statutory and regulatory approvals required for the disposal of parkland under New Jersey State law.  Given the limited record with respect to the actions taken by the county after execution of the settlement agreement, we briefly review the rights and obligations required under State law for context.

Pursuant to a statutory grant of authority under the Green Acres laws,[6] the NJDEP commissioner has prescribed rules and regulations governing the disposal or diversion of parkland property.  See N.J. Admin. Code sec. 7:36-1.2 (2011).  Those regulations provided that the partial driveway, by virtue of its status as parkland protected under the Green Acres laws, could not be conveyed to Mr. DiDonato without approval of the conveyance from the Office of Green Acres in the NJDEP, the NJDEP commissioner, and the State House Commission (commission).  Id. sec. 7:36-26.3; see id. sec. 7:36-2.1.

The county was required to hold a public hearing on the application and provide the public with an opportunity to submit

---

[6]The Commissioner of the NJDEP (NJDEP commissioner) is granted authority to prescribe rules and regulations governing the administration, operation, and use of lands as set forth in the New Jersey Green Acres Land Acquisition Act of 1961, N.J. Stat. Ann. sec. 13:8A-1 (West 1961), the New Jersey Green Acres Land Acquisition Act of 1971, N.J. Stat. Ann. sec. 13:8A-19 (West 1971), the New Jersey Green Acres Land Acquisition and Recreation Opportunities Act, N.J. Stat. Ann. sec. 13:8A-35 (West 1975), and the Garden State Preservation Trust Act, N.J. Stat. Ann. sec. 13:8C-1 (West 1999).  We refer to these laws collectively as the Green Acres laws.

written comments to the NJDEP. Id. sec. 7:36-26.6(c), (d), (e). Following that hearing, the county was required to submit additional documentation to the NJDEP and wait at least 75 days before the commission considered the application. Id. sec. 7:36-26.6(f). After receiving the county's posthearing submissions, the commission was authorized to approve or disapprove of the application for disposition of the partial driveway interest to Mr. DiDonato. Id. sec. 7:36-26.6(g). Upon approval of the disposition of the partial driveway interest, the county was generally required to remit to NJDEP, for deposit in the GSPT, the amount of monetary compensation proposed by the county and approved by the Commission. Id. sec. 7:36-26.6(i). Upon actual or equivalent receipt of such compensation, the NJDEP Commissioner was to execute a release of the Green Acres laws and restrictions on the parkland which the Commission approved to be disposed of or diverted. Id. sec. 7:36-26.3(a)(9).

At some point after December 27, 2004, the county filed an application with the commission and requested that restrictions under the Green Acres laws be released for the partial driveway interest to be conveyed to Mr. DiDonato. Pursuant to an agreement entered into between the county and the commission, the county purchased 16.66 acres of land and agreed to dedicate that land as parkland encumbered by the Green Acres laws. A portion of the purchase price ($36,000) was funded with proceeds from the

sale of the partial driveway interest to Mr. DiDonato.  The balance of the purchase price was paid by the county with "open space tax funds and Green Acres funds".  As a condition of the sale of the partial driveway interest, Mr. DiDonato agreed to convey to the county a reciprocal deed which permanently restricted the development of the Schaafsma parcel to one single-family home.  On December 12, 2005, the commission approved that application and the sale of 2.05 acres of land from the county to Mr. DiDonato.[7]

On or about December 22, 2006, the county sent to Mr. DiDonato a letter acknowledging and thanking him for his "donation" of the development rights to the Schaafsma parcel. That letter advised Mr. DiDonato that the county did not independently appraise the donated property and that it was Mr. DiDonato's responsibility to determine the value of the donated property for "income tax deductibility" purposes.

On December 29, 2006, the county conveyed the partial driveway interest to Mr. DiDonato by deed (deed) from the county in exchange for (1) $47,031, and (2) a reciprocal deed from Mr. DiDonato transferring development rights to the Schaafsma parcel. The deed provided that the partial driveway interest conveyed to Mr. DiDonato merged into and became part of the Schaafsma parcel.

---

[7]We understand these 2.05 acres to be the same partial driveway interest which the county agreed to convey to Mr. DiDonato under the settlement agreement.

On March 6, 2007, the NJDEP and the county executed a Green Acres Release and Compensation Agreement and Deed of Restriction, whereby the State agreed to release the land restrictions on the partial driveway interest conveyed to Mr. DiDonato in exchange for a reciprocal deed from Mr. DiDonato to the county permanently restricting the development of the subject property to one single-family home. On March 19, 2007, Mr. DiDonato and the county executed a Deed of Restriction (deed of restriction), whereby Mr. DiDonato conveyed to the county a permanent restriction against the use of the Schaafsma property for more than one single-family home.

In October 2005 petitioners filed their 2004 return, on which they claimed a charitable contribution deduction relating to the easement contribution. Attached to that return was Form 8283, Noncash Charitable Contributions, on which petitioners reported the appraised fair market value of the land conservation easement as $1,870,000 and their cost or adjusted basis as $300,000. The Form 8283 was not signed by an appraiser or an authorized representative of the county. Petitioners also attached to their 2004 return a Self Contained Complete Appraisal Report (appraisal) prepared by Tighue Appraisal Group (Tighue).

The appraisal was dated October 3, 2005, and valued three parcels of property owned by Mr. DiDonato as of August 27, 2004,

the Schaafsma parcel and one additional parcel.[8] The purpose of the appraisal was to estimate a fee simple estate of those three parcels, and the value of development rights of those parcels. The appraisal reported that the market value of the three parcels unrestricted by the easement was $2,070,000. The appraisal also reported that the market value of the three parcels restricted by the easement was $200,000. The appraisal concluded that the value of the easement was the difference of $1,870,000.

During the discovery stage of this proceeding, respondent requested from petitioners a Form 8823[9] signed by Tighue and the county. Mr. DiDonato, through counsel, responded that no such Form 8283 was received. By notice of deficiency dated February

_____

[8]Although respondent does not allege any defect in the appraisal in the motion, we express concern over the validity and credibility of that appraisal. First, we observe that the appraisal includes in the value of the donated property the development rights on three parcels of property when the deed of restriction concerned development rights on only the two parcels making up the Schaafsma parcel. Second, the appraisal uses market value and not fair market value as a standard of value. In that regard, the definition of market value in the appraisal embodies selective elements of fair market value but does not encompass the definition of fair market value required by sec. 20.2031-1(b), Estate Tax Regs. See Bank One Corp. v. Commissioner, 120 T.C. 174, 303 (2003), affd. in part and vacated in part sub nom. J.P. Morgan Chase & Co. v. Commissioner, 458 F.3d 564 (7th Cir. 2006).

[9]Respondent's request for production of documents requested "Form 8823", which is a form used by a taxpayer to notify the Internal Revenue Service of noncompliance with the low-income housing tax credit provisions or any low-income housing building disposition. See sec. 42(m)(1)(B)(iii). Given the context of respondent's document request, we assume that respondent intended to request an executed Form 8283 and not Form 8823.

20, 2009, respondent determined that petitioners were not entitled to deduct any part of the $1,870,000 charitable contribution reported on their 2004 Federal income tax return. Petitioners petitioned the Court on May 1, 2009.

## Discussion

The issue before the Court on the motion and the cross-motion is whether petitioners substantiated the reported charitable contribution in the manner required by section 170(f)(8) and section 1.170A-13(c)(2), Income Tax Regs. Respondent argues that petitioners did not substantiate the charitable contribution because petitioners (1) failed to obtain a contemporaneous written acknowledgment of the donated property as required by section 170(f)(8), and (2) did not attach to their 2004 return a completed appraisal summary (i.e., Form 8283) as required by section 1.170A-13(c)(2)(i)(B), Income Tax Regs. Petitioners argue that they substantiated the charitable contribution because (1) the settlement agreement qualifies as a contemporaneous written acknowledgment under section 170(f)(8), and (2) the Form 8283 which they attached to their 2004 Federal income tax return substantially complied with the requirements of section 1.170A-13(c)(2)(i)(B), Income Tax Regs.  We agree with respondent.

## I.  Standard of Review

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials of phantom factual issues. Boyd Gaming Corp. v. Commissioner, 106 T.C. 343, 346-347 (1996); Kroh v. Commissioner, 98 T.C. 383, 390 (1992).  Either party may move for summary judgment upon all or any part of the legal issues in controversy.  Rule 121(a); FPL Group, Inc. v. Commissioner, 116 T.C. 73, 74 (2001).  We will render a decision on a motion for partial summary judgment "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, * * * show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).  The parties filed the motion and the cross-motion for partial summary judgment on whether petitioners have properly substantiated the $1,870,000 charitable contribution they reported on the 2004 return.  The parties agree, and we conclude, that there is no genuine issue of material fact and that a decision may be rendered as a matter of law.

## II.  Noncash Charitable Contribution

Section 170(a)(1) generally allows a deduction for any charitable contribution made within the taxable year.  Section 170(c)(1) defines a charitable contribution for this purpose to

include a contribution or gift to or for the use of a political subdivision of a State, such as the county. See <u>Woodbury v. Commissioner</u>, T.C. Memo. 1988-272, affd. 900 F.2d 1457 (10th Cir. 1990). Before a taxpayer may claim entitlement to a charitable contribution deduction, he or she must satisfy various statutory and regulatory recordkeeping requirements. The parties dispute whether Mr. DiDonato substantiated his contribution of land development rights in the Schaafsma parcel in the manner required by section 170(f)(8) and section 1.170A-13(c)(2), Income Tax Regs. We focus on petitioners' ability to meet the requirements of section 170(f)(8).

Under section 170(f)(8)(A), a taxpayer is generally allowed a charitable contribution deduction of $250 or more only if the contribution is substantiated by a contemporaneous written acknowledgment by the donee organization. See also sec. 1.170A-13(f)(1), Income Tax Regs. That acknowledgment must be from a donee organization and must generally state: (1) The amount of cash and a description of any noncash property contributed by the taxpayer; (2) whether the donee organization provided any goods or services in consideration for the property contributed; and (3) a description and good faith estimate of the value of any goods or services contributed by the taxpayer. See sec. 170(f)(8)(A) and (B); sec. 1.170A-13(f)(2), Income Tax Regs.

The parties disagree on whether the settlement agreement qualifies as a contemporaneous written acknowledgment under section 170(f)(8).  We need not address whether the settlement agreement was contemporaneous within the meaning of the statute because, as discussed below, the settlement agreement is not an "acknowledgment" within the purview of section 170(f)(8)(A).

Although section 170(f)(8) sets forth the information which must be included in a qualifying acknowledgment, neither Congress nor the Secretary defined the term "acknowledgment" for purposes of that section.  We are also unaware of any reported decision or legislative history interpreting the term "acknowledgment" in the context of section 170(f)(8).  We therefore use the "'ordinary, contemporary, common meaning'" of the term "acknowledgment" when applying section 170(f)(8).  See Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. Pship., 507 U.S. 380, 388 (1993) (quoting Perrin v. United States, 444 U.S. 37, 42 (1979)); Alcoa, Inc. v. United States, 509 F.3d 173, 181 (3d Cir. 2007); Med. Transp. Mgmt. Corp. v. Commissioner, 127 T.C. 96, 101 (2006).

Black's Law Dictionary defines the term "acknowledgment" as "the act of making it known that one has received something." Black's Law Dictionary 23 (7th ed. 1999); see also Merriam-Webster's Collegiate Dictionary 10 (10th ed. 1997).  We agree with this definition in the light of the purpose behind enactment of section 170(f)(8).  As the Court of Appeals for the Ninth

Circuit stated in Addis v. Commissioner, 374 F.3d 881, 885 (9th

Cir. 2004), affg. 118 T.C. 528 (2002),

> Congress enacted section 170(f)(8) to increase
> compliance with the rule that "where a charity receives
> a quid pro quo contribution (i.e, a payment made partly
> as a contribution and partly in consideration for goods
> or services furnished to the payor by the donee
> organization)," a charitable contribution deduction is
> limited to the amount exceeding the value of the
> consideration received. H. Rep. 103-111, at 785
> (1993). Section 170(f)(8) "does not impose an
> information reporting requirement upon charities;
> rather it places the responsibility upon taxpayers ...
> to request ... substantiation from the charity of their
> contribution (and any good or service received in
> exchange)." H. Conf. Rep. 103-213, at 563-64 (1993).

See also Weyts v. Commissioner, T.C. Memo. 2003-68 (discussing

the reasons behind enactment of section 170(f)(8)). From Addis

and the relevant legislative history, it is clear that Congress

required a donee organization to acknowledge in a contemporaneous

written document that it received cash or property for two

principal reasons: First, to inform the donor that all or a

portion of an amount contributed to a donee organization may not

be deductible; and second, to ease the administration and audit

of charitable contributions deductions. See Addis v.

Commissioner, 118 T.C. at 536; H. Rept. 103-111, at 785 (1993),

1993-3 C.B. 167, 361. It is against this backdrop that we

conclude that the settlement agreement is not an acknowledgment

for purposes of section 170(f)(8).

Petitioners argue that the settlement agreement qualifies as

a contemporaneous written acknowledgment because that agreement

"legally obligated" Mr. DiDonato to donate his development rights in the Schaafsma parcel. We disagree. The substantive rights and obligations created by the settlement agreement on August 27, 2004, were "subject to and conditioned upon" the county's obtaining approval for the disposition of parkland from the commission at some future date. The commission, however, did not approve the disposition of the partial driveway interest until December 12, 2005, more than 15 months after the settlement agreement was executed. When the settlement agreement was entered into on August 27, 2004, Mr. DiDonato was not under a contractual duty to convey his development rights to the county and no legal obligation was certain to occur. The county was therefore not able to acknowledge receipt of Mr. DiDonato's development rights on August 27, 2004, because his obligation to transfer those rights had not yet matured and were not certain to do so.

The settlement agreement also provided that if any term therein was not satisfied, then Mr. DiDonato and the county agreed to return to the special master for further proceedings. The outcome of those further proceedings would then replace any duty on the part of Mr. DiDonato to convey his development rights to the county. If the commission did not approve the disposition of the partial driveway interest, then the settlement agreement would have been superseded by the outcome of those additional

proceedings.  See, e.g., <u>Enter. Energy Corp. v. United States (In re Columbia Gas Sys., Inc.)</u>, 50 F.3d 233, 241-243 (3d Cir. 1995).

The chronology of events surrounding the county's contribution of the partial driveway interest to Mr. DiDonato and Mr. DiDonato's reciprocal conveyance of his development rights to the county also suggests that the county was not assured of receiving Mr. DiDonato's development rights by August 27, 2004. After the settlement agreement was executed, the county applied to the commission for approval to dispose of the partial driveway interest in fee simple.  Only after the county obtained the commission's approval to dispose of the partial driveway interest on December 12, 2005, did the county send Mr. DiDonato the letter dated December 22, 2006, which acknowledged and thanked him for his "donation".  The county's actions indicate that the county did not regard Mr. DiDonato's obligation under the settlement agreement as mature until the commission approved disposition of the partial driveway interest.  Given that the county did not regard Mr. DiDonato's contribution of his development rights as complete, how then could a county representative have acknowledged receipt of those rights?  The answer, we believe, is that the county could not have acknowledged receipt of Mr. DiDonato's development rights as of August 27, 2004, because the condition obligating Mr. DiDonato to transfer those rights to the county (i.e., approval from the commission) had not been

satisfied and therefore the obligations of Mr. DiDonato under that agreement had not matured.

Petitioners do not argue, and we do not find, that the letter from the county to Mr. DiDonato dated December 22, 2006, qualifies as a contemporaneous written acknowledgment for 2004. First, that letter does not satisfy the contemporaneousness requirement because it was obtained after petitioners filed the 2004 return. See sec. 170(f)(8)(C)(i). Second, that letter does not contain a statement that the county provided no goods or services in consideration for Mr. DiDonato's contribution as required by section 170(f)(8)(ii). See, e.g., Schrimsher v. Commissioner, T.C. Memo. 2011-71 (denying a charitable contribution deduction where an agreement did not include a description and good faith estimate of the consideration paid by a donee); Hollingsworth v. Commissioner, T.C. Memo. 2010-262 (disallowing a charitable contribution deduction where two separate documents offered by the taxpayer failed to state whether the donee provided any goods or services in consideration of the charitable contribution); Kendrix v. Commissioner, T.C. Memo. 2006-9; Castleton v. Commissioner, T.C. Memo. 2005-58, affd. 188 Fed. Appx. 561 (9th Cir. 2006). Thus, the letter dated

December 22, 2006, similarly fails as a contemporaneous written acknowledgment under section 170(f)(8)(A).[10]

III. Conclusion

In the light of the foregoing, we hold that the settlement agreement does not qualify as a contemporaneous written acknowledgment within the meaning of section 170(f)(8)(A).  Given that petitioners do not have a written acknowledgment from the county and that they have not established any exception to the written acknowledgment requirement, see, e.g., sec. 170(f)(8)(D), we conclude that petitioners are precluded by statute from deducting the $1,870,000 as a charitable contribution, see Hill v. Commissioner, T.C. Memo. 2004-156.  Accordingly, we will grant the motion and deny the cross-motion.  In so deciding, we have considered all arguments raised by the parties, and to the extent not discussed herein we conclude that they are irrelevant, moot, or without merit.

To reflect the foregoing,

An appropriate order will be issued granting respondent's motion and denying petitioner's cross-motion.

---

[10]Petitioners do not assert that the Form 8283 which they filed with their 2004 return serves as a contemporaneous written acknowledgment.  See Friedman v. Commissioner, T.C. Memo. 2010-45.