T.C. Summary Opinion 2016-30

UNITED STATES TAX COURT

PERRY WALTER PAYNE AND FLORENCE NAKAKANDE KASULE,
Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 25006-14S.                    Filed June 23, 2016.

Perry Walter Payne and Florence Nakakande Kasule, pro sese.

David A. Indek, for respondent.

SUMMARY OPINION

GERBER, Judge:  This case was heard pursuant to the provisions of section

7463 of the Internal Revenue Code in effect when the petition was filed.[1]

_____

[1]Unless otherwise indicated, all section references are to the Internal

(continued...)

Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined income tax deficiencies for petitioners' 2010 and 2011 tax years of $14,008.12, and $18,651, respectively. Respondent also determined accuracy-related penalties under section 6662(a) for 2010 and 2011 of $2,801.62, and $3,730.20, respectively. In an amendment to answer, filed August 12, 2015, respondent asserted increases in the income tax deficiencies for 2010 and 2011 of $8,361 and $8,137, respectively. Respondent also asserted increases in the section 6662(a) accuracy-related penalties for 2010 and 2011 of $1,672.20 and $1,627.40, respectively.

The issues[2] for consideration are (1) whether petitioners are entitled to various noncash charitable contribution deductions for 2010 and 2011 and (2) whether petitioners are liable for accuracy-related penalties for 2010 and 2011.

---

[1](...continued)
Revenue Code in effect for the years under consideration, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]Petitioners contested only the charitable contribution deduction disallowance for 2010 and 2011 as determined in the notice of deficiency and conceded the passive loss issue that gave rise to the increased income tax deficiencies and penalties asserted by respondent in his amendment to answer. The increased income tax deficiencies before the Court are $22,369.12 for 2010 and $26,788.00 for 2011. The accuracy-related penalties before the Court are $4,473.82 for 2010 and $5,357.60 for 2011.

## Background

At the time their petition was filed, petitioners resided in Maryland. Petitioner Perry Walter Payne earned income as a professor during 2010 and 2011. Petitioner Florence Nakakande Kasule earned income as a contract specialist during 2010 and 2011. Petitioners' modified adjusted gross income exceeded $150,000 for each of the 2010 and 2011 taxable years. Mr. Payne earned a juris doctor degree but does not practice law.

During 2010 and 2011 petitioners resided in a 1,600-square-foot home and also owned an unfurnished condominium that they intermittently rented out during that period. The 1,600-square-foot home also had a one-car garage. Mr. Payne also owned two inherited residences in Memphis, Tennessee. One residence, inherited in 2007, was rented to a third party during 2010 and 2011. The other was inherited some time during 2011 and was furnished. During 2010 and 2011 petitioners owned two sedan automobiles. Petitioners did not have a truck or larger vehicle during 2010 and 2011.

On Schedule A, Itemized Deductions, of their 2010 Federal income tax return (return) petitioners deducted $455 as cash charitable contributions and $79,000 as noncash charitable contributions. On Schedule A of their 2011 return petitioners deducted $1,600 as cash charitable contributions and $90,000 as

noncash charitable contributions. The total of the claimed charitable contribution deductions for 2010 and 2011 represented amounts that were approximately 46% and 47% of petitioners' adjusted gross income for each year, respectively.

Attached to petitioners' 2010 return was a Form 8283, Noncash Charitable Contributions, listing the names of four charitable organizations. Also attached to their 2010 return were 27 receipt forms that petitioners obtained from three of the charitable organizations in support of petitioners' noncash charitable contributions. Most of the forms for 2010 were not signed or initialed by anyone, and none of the receipt forms were accompanied by any indication of the specific items claimed to be donated. The following table shows the organization name, the date, and the amount claimed to be contributed reflected on the receipt forms for 2010:

| Organization | Date | Amount |
| --- | --- | --- |
| Vietnam Veterans | 9/6 | $2,500 |
|  | 12/6 | 3,000 |
| Lupis Foundation | 5/22 | 3,500 |
|  | 5/31 | 2,000 |
|  | 8/10 | 3,000 |
| National Children's Center | 1/17 | 2,500 |
|  | 2/7 | 2,500 |
|  | 2/12 | 3,500 |
|  | 3/8 | 2,000 |

| | |
|---|---|
| 3/17 | 2,500 |
| 3/19 | 3,000 |
| 4/2 | 2,000 |
| 4/13 | 3,000 |
| 5/12 | 2,500 |
| 5/15 | 3,000 |
| 6/14 | 3,000 |
| 6/23 | 3,000 |
| 7/13 | 2,000 |
| 7/16 | 3,000 |
| 8/12 | 3,000 |
| 8/14 | 2,000 |
| 8/22 | 3,000 |
| 9/7 | 2,500 |
| 10/4 | 2,500 |
| 11/15 | 3,000 |
| 12/3 | 2,500 |
| 12/5 | 3,500 |
| Total | 73,500 |

Similarly for 2011, petitioners attached 26 receipt forms obtained from various charities with even dollar amounts ranging from $500 to $5,000 each. The total of the 26 receipts attached for 2011 was $83,500. Twenty-three of the 2011 receipts contained either generic or no descriptions of specific items. Three of the receipts attached to the 2011 return had some detail about the items and may have been prepared by the charitable organization. One receipt attached to petitioners' 2011 return was from Salvation Army in Memphis, Tennessee. It was related to a pickup at the Memphis home inherited by Mr. Payne and listed various specific items of furniture. The other two receipts were from Sustainable

Community Initiative and reflected specific items. One listed "25 various sized pieces of drywall" and on the other "3 file cabinets, 1small book case, 1 toilet, 1foldaway bed". The values assigned by petitioners were $500 for the drywall and $1,000 for the other five items. Petitioners did not disclose their basis, cost, or date of acquisition in any of the three receipts and no valuations were attached to the return or the receipts.

Petitioner's Form 8283 contained only limited information. The names of the four charitable organizations were listed on the Form 8283, but there was no specific information about the individual items of property, the cost or basis, the valuation method, or the date of acquisition. As an example, petitioners, in support of approximately $60,000 of donations claimed with respect to the National Children's Center, broadly characterized the items as follows: "Various items/goods--antique, furniture, appliances, books, household items, clothes, electronics, toys, etc." The same broad language was also used for the other named charities. Likewise, petitioners' 2011 Form 8283 contained the same above-quoted list but no specific information was shown. Petitioners did not obtain appraisals for any of the items they listed as contributions on their 2010 or 2011 return. Petitioners did not retain or offer any records or other evidence

concerning the cost, basis, or date of acquisition of any items listed as noncash contributions for 2010 or 2011.

Petitioners claimed noncash charitable contribution deductions in amounts exceeding $25,000 for the years 2006 through 2009, and they claimed $80,000, $36,000, and $52,000 for 2012, 2013, and 2014, respectively. Petitioners claimed those noncash charitable contribution deductions for property similar to that described in their summaries in this case.

Petitioners' 2010 and 2011 returns were examined by respondent, and petitioners were requested to supply some specifics and/or substantiation of the items described generically on their 2010 and 2011 tax returns. Petitioners supplied summary spreadsheets, prepared after their returns were filed, to respondent's agent during the audit. The summaries contained some detailed information not shown on the Forms 8283 attached to their returns. The summaries contained the following generic descriptions: "women's shoes--lots [$2,000]"; "men's pants and shirts multiple [$1,600]"; and "men's casual shirts--lots [$1,000]" without describing the number or specific value or cost of individual items. The summaries reflected a fair market value for each generic category, and that value, in almost every instance, was 50% of the cost or basis

shown. In most instances the summaries reflected that the items were "1 or less" and "2 or less" years old.

The summary for 2010 purported to reflect the groups of items that petitioners claimed in support of their $79,000 charitable contribution deduction. These were set forth in 15 categories, each containing similar items. Four had similar items that totaled more than $5,000. The remaining categories each totaled less than $5,000 per category. Likewise, the summary for 2011 reflected 18 categories of similar items that petitioners contend made up the $90,000 deducted. Of the 18 categories, 4 had similar items that totaled more than $5,000. The remaining categories each totaled less than $5,000. None of the groups of items reflected in the summaries totaled less than $250.

In addition to the summaries, petitioners presented to respondent's agent printouts from Internet sites, such as Craigs List, showing pictures and the asking prices for various items that petitioners contended were representative of the items described on their summaries.

Discussion[3]

The focus of this case is on petitioners' noncash charitable contribution deductions claimed for 2010 and 2011. Petitioners claimed deductions for noncash charitable contributions of property of $79,000 and $90,000 for 2010 and 2011, respectively. Respondent, in the notices of deficiency, disallowed all but $1,500 for each year. The issues for our consideration are, first, whether petitioners have shown that they are entitled to deduct amounts for noncash charitable contributions in excess of the amounts allowed by respondent. Second, we consider whether petitioners were required to obtain an appraisal with respect to any of the property that they claimed to have donated. Finally, we consider whether petitioners are liable for accuracy-related penalties for 2010 and/or 2011 under section 6662(a).

Generally, deductions are a matter of legislative grace, and taxpayers bear the burden of proving entitlement to any deduction claimed. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Section 6001 requires taxpayers to

---

[3]On the record, the parties agree that petitioners bear the burden of showing their entitlement to the contribution deductions under consideration. See Rule 142(a). The parties also agree that respondent has the burden of production with respect to the accuracy-related penalties. See sec. 7491(c).

maintain records sufficient to establish the amount of each deduction. See sec. 1.6001-1(a), (e), Income Tax Regs.

More specifically, section 170 provides for a deduction from adjusted gross income for charitable contributions made during a taxable year. The allowance of a deduction is subject to verification under regulations prescribed by the Secretary. Sec. 170(a)(1); sec. 1.170A-13, Income Tax Regs. The nature of the required substantiation depends on the size of the contribution and on whether it is a gift of cash or noncash property. For all contributions of $250 or more, the taxpayer generally must obtain a contemporaneous written acknowledgment from the donee. Sec. 170(f)(8)(A). "Separate contributions of less than $250 are not subject to the requirements of section 170(f)(8), regardless of whether the sum of the contributions made by a taxpayer to a donee organization during a taxable year equals $250 or more." Sec. 1.170A-13(f)(1), Income Tax Regs.

Additional substantiation requirements are imposed for contributions of property with a claimed value exceeding $500. Sec. 170(f)(11)(B). For contributions of property with a claimed value exceeding $5,000 the substantiation requirements include the need for a "qualified appraisal". Sec. 170(f)(11)(C). "Similar items of property" must be aggregated in determining whether gifts exceed the $500 and $5,000 thresholds. See sec. 170(f)(11)(F). "For purposes of

determining thresholds under this paragraph, property and all similar items of property donated to 1 or more donees shall be treated as 1 property." Id. The term "similar items of property" is defined to mean "property of the same generic category or type", such as clothing, jewelry, furniture, electronic equipment, household appliances, or kitchenware. Sec. 1.170A-13(c)(7)(iii), Income Tax Regs.

Section 170(f)(8)(A) provides that an individual may deduct a gift of $250 or more only if he substantiates the deduction with "a contemporaneous written acknowledgment of the contribution by the donee organization". See Weyts v. Commissioner, T.C. Memo. 2003-68. This acknowledgment must: (1) include a description of any property other than cash contributed; (2) state whether the donee provided any goods or services in exchange for the gift; and (3) if the donee did provide goods or services, include a description and a good-faith estimate of their value. Sec. 170(f)(8)(B); sec. 1.170A-13(f)(2), Income Tax Regs. The acknowledgment is "contemporaneous" if the taxpayer obtains it from the donee on or before the earlier of: (1) the date the taxpayer files a return for the year of contribution or (2) the due date, including extensions, for filing that return. Sec. 170(f)(8)(C).

Petitioners reported $169,000 of noncash contributions to charities over a two-year period, all of which exceeded $250 in claimed value. Most of the claimed contributions exceeded $500 and several individual contributions of property or collective categories of similar property exceeded $5,000. Petitioners' returns and attached receipts, with limited exceptions (3 out of 53 instances), did not contain specific itemization with respect to the property they claimed to have contributed in accord with the above statutes and regulations. None of the 27 receipts attached to petitioners' 2010 return included a description of the property written by the donee organization. Of 26 receipts attached to petitioners' 2011 return, three included a description of the property and a contemporaneous written acknowledgment of the contribution by the donee organization that appears to have been written by the donee organization. Petitioners did not present to respondent or the Court any underlying records or other evidence showing their cost or other basis or manner of acquisition of the property alleged to have been contributed. Petitioners have failed to carry their burden of showing entitlement to noncash charitable contribution deductions in excess of the amounts allowed by respondent for 2010 or 2011.

After the returns for petitioners' 2010 and 2011 tax years were under examination by respondent, they supplied summaries that listed generalized

categories such as "women's dresses--multiple" along with cost and fair market value estimates for each category. They also provided pictures they had obtained from the Internet which they contend represented the property contributed and its cost, basis, or value. Mr. Payne testified with respect to the receipts, summaries, and Internet pictures. His testimony with respect to the alleged contributed property was oftentimes vague, illusive, and broad-brushed. Even though the summaries had more information than the returns, Mr. Payne indicated that no records were maintained and/or retained with respect to the noncash contributions, other than the receipts attached to the returns. Petitioners were unable to produce any evidence of cost or acquisition of the alleged donated property even though, for the most part, the summaries reflected that most of the property was acquired either less than one year or less than two years before the contribution. With the exception of 3 of the 53 receipts for 2010 and 2011, there was no specific information identifying individual items.

Further analysis of the summaries reveals that clothing made up $56,600 of the $79,000 claimed for 2010 and $53,840 of the $90,000 claimed for 2011. For 2010 there were 54 entries for multiple quantities of clothing or shoes averaging over $1,000 per alleged contribution. For 2011 there were 46 entries for multiple quantities of clothing or shoes averaging over $1,100 per alleged contribution.

The enormity and repeated volume of the numbers and costs of the items of clothing contained in the summaries without one scrap of evidence of the purchase or acquisition (even though the listed acquisition dates were less than one year or two years earlier) is wholly lacking in credibility.  We find that the summaries and Internet pictures that petitioners offered into evidence to support their claimed contributions lack credibility and fail to substantiate that any amounts of contributions in excess of those allowed by respondent for 2010 and 2011 are allowable.

Other indications in this record show that petitioners' evidence lacks credibility.  Petitioners live in a 1,600-square-foot home and have a one-car garage.  They also own a condominium that was rented to others.  The quantity of furniture and large items that petitioners alleged to have possessed and given to charities each year would not likely have fit in their home.  In addition, Mr. Payne contended that he regularly found  property that had been placed by the curb as unwanted property.  He contended that he would pick up the property and that he would take it to his home and/or the charities.  One of many such examples in the fabricated summary for 2010 concerns a "dining room table and chairs--vintage"

that petitioners contend was found or picked up.[4]  In connection with that item

they further contend that the original value was $3,000 and that the fair market

value was $1,500.  They also contend that, as with most of the property listed, they

owned the property for two years or less.

We also note that the summaries, with few exceptions, list the fair market

value as being 50% of the alleged cost.  We find it unbelievable that all of the

alleged used clothing, furniture, bedding, computers, bicycles, shoes, television

sets, etc. would be worth 50% of their original acquisition cost.  If petitioners had

actually contributed some of the property listed in the summaries, the reality of

those contributions has been lost in the overstated universe of alleged

contributions created by petitioners.

With respect to the claimed 2011 contribution of property worth $5,000

consisting of furniture picked up by the Salvation Army in Memphis, petitioners

have provided a more believable scenario, which in some respects meets the

requirements.  However, their deduction attempt must fail because they have not

_____

[4]We note that petitioners did not report any income from the found property; and under the tax benefit rule they would not be entitled to a deduction for such items if they did not first take the value into income.  See Rosen v. Commissioner, 71 T.C. 226 (1978), aff'd, 611 F.2d 942 (1st Cir. 1980); see also Cesarini v. United States, 296 F. Supp. 3 (N.D. Ohio 1969), aff'd, 428 F.2d 812 (6th Cir. 1970).

provided a qualified valuation as required by section 170(f)(11)(C). With respect to the claimed $500 of drywall and $1,000 of household items reflected in a receipt from Sustainable Community Initiative, petitioners did not comply with section 170(f)(11)(B) and the regulations thereunder. Section 1.170A-13(b)(3)(i), Income Tax Regs., requires that a taxpayer must maintain written records for deduction of $500 or more containing the manner of acquisition, approximate date of acquisition, cost or other basis, and related information. Petitioners did not maintain any such records and did not set forth that information on either their 2010 or 2011 return. Furthermore, certain of those items (i.e. household or furniture) in the aggregate exceeded $5,000 in each year.

Petitioners, at trial and on brief, argued that the $5,000 aggregation rule of section 170(f)(11)(C) should not be applied irrespective of the timing of the noncash contributions and the use of the term "similar types of property" was too broadly applied by respondent in his argument to the Court. Petitioners argue that commercial sellers of property, such as Amazon, use categories more specific than those used by respondent and suggested by the regulations. See sec. 1.170A-13(c)(7)(iii), Income Tax Regs. The regulations, however, use the same broad terms used by respondent (i.e. furniture, household items, etc.). In the Forms 8283 and receipts attached to the returns, petitioners used broad, sweeping categories

without any delineation to describe the property claimed to have been contributed. In the subsequently created summaries, using petitioners' terminology, a large number of the items listed could easily be aggregated and found collectively to be worth in excess of the $5,000 threshold. See Kunkel v. Commissioner, T.C. Memo. 2015-71; Smith v. Commissioner, T.C. Memo. 2014-203.

Ultimately, we need not address or sort through the parties' categorizations of which property is "similar" because petitioners' failure to meet the underlying substantiation and recordkeeping requirements, is by itself a sufficient basis to hold that respondent's determinations are not in error. See Tokh v. Commissioner, T.C. Memo. 2001-45, aff'd, 25 F. App'x 440 (7th Cir. 2001).

Petitioners also argue that congressional intent was to "incentivize citizens to actually donate * * * [and] * * * Congress sets the limit pretty high * * * [permitting] * * * donations that * * * reach up to 50 percent of your adjusted gross income". Petitioners further contend that congressional intent is a strong incentive to reach that 50% level. Although one might agree with petitioners that the statutes permit up to 50% of a taxpayer's adjusted gross income to be the maximum limit of contributions for a taxable year, that does not diminish the above-quoted statutory and regulatory substantiation requirements that petitioners failed to meet.

Section 6662(a) imposes an accuracy-related penalty equal to 20% of the underpayment to which section 6662 applies. Section 6662 applies to the portion of any underpayment which is attributable to, inter alia, negligence or disregard of rules or regulations, sec. 6662(b)(1), or a substantial understatement of income tax, sec. 6662(b)(2). There is a substantial understatement of income tax for any taxable year if the amount of the understatement exceeds the greater of 10% of the tax required to be shown on the return for the taxable year or $5,000. Sec. 6662(d)(1)(A). The understatements of income tax for both years come within the definition of a substantial understatement and, accordingly, respondent has met his burden of production with respect to the penalties.

Section 6664(c)(1) provides that the penalty under section 6662(a) shall not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. See Higbee v. Commissioner, 116 T.C. 438, 448 (2001). Petitioners have failed to show that the penalties are inappropriate because of reasonable cause. Petitioners' failure to keep adequate records or comply with the rules and regulations further supports the imposition of the section 6662(a) accuracy-related penalties for 2010 and 2011. We accordingly hold that

petitioners are liable for the accuracy-related penalties under section 6662(a) for 2010 and 2011.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.