118 T.C. No. 32

UNITED STATES TAX COURT

CHARLES H. ADDIS AND CINDI ADDIS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6628-00.                    Filed June 10, 2002.

Ps claimed charitable contribution deductions for
their payments to NHF of $36,285 in 1997 and $36,000 in
1998.  NHF, in turn, paid those amounts as premiums on
a so-called charitable split-dollar life insurance
policy on the life of P-W.  NHF was entitled to receive
56 percent and Ps' family trust was entitled to receive
44 percent of the death benefit provided by the policy.

NHF was not required to pay the premiums for that
policy.  However, Ps reasonably expected NHF to do so
because Ps' continued payments to NHF, and NHF's
receipt of a death benefit, depended on NHF's paying
the premiums.

NHF provided Ps with receipts for their payments
which stated that NHF did not provide any goods or
services to Ps in return for the payments.  Ps claimed
charitable contribution deductions for the entire
amount of their payments to NHF.

Held: No part of Ps' payments to NHF is deductible as a charitable contribution to NHF because Ps did not meet the substantiation requirements of sec. 170(f)(8), I.R.C., and sec. 1.170A-13(f)(6), Income Tax Regs.

Steven Toscher and Michel R. Stein, for petitioners.

Lorraine Wu, for respondent.

COLVIN, Judge: Respondent determined deficiencies in petitioners' Federal income tax of $13,062 for 1997 and $12,960 for 1998.

Petitioners claimed charitable contribution deductions for their payment to the National Heritage Foundation (NHF) of $36,285 in 1997 and $36,000 in 1998, which NHF used to pay premiums on a life insurance policy for the life of petitioner Cindi Addis (Mrs. Addis). The insurance policy for Mrs. Addis was a so-called charitable split-dollar life insurance contract, under which NHF was entitled to receive 56 percent of the death benefit and petitioners' family trust was entitled to receive 44 percent. Respondent disallowed petitioners' charitable contribution deductions for all of their payments to NHF.

The sole issue for decision is whether petitioners may deduct their payments to NHF as charitable contributions.[1] We hold that they may not.

Unless otherwise indicated, section references are to the Internal Revenue Code. Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A. Petitioners

Petitioners lived in Bakersfield, California, when they filed their petition in this case. Charles H. Addis (petitioner) has been a farm labor contractor in the Bakersfield area for the last 20 years.

B. Petitioners' Family Trust and Foundation

1. The Addis Family Trust

On May 7, 1986, petitioners formed the Charles H. Addis Family Trust (Addis family trust). Petitioners are the trustors, first designee trustees, and initial beneficiaries of the Addis family trust. Under the trust instrument, petitioner's children and Mrs. Addis' parents or siblings become beneficiaries of the Addis family trust upon the deaths of petitioner and Mrs. Addis.

---

[1] Petitioners contend that sec. 7491(a) requires respondent to bear the burden of proof on all issues in the case. We need not decide petitioners' contention because our findings and analysis do not depend on which party bears the burden of proof.

2.    NHF

NHF is a section 501(c)(3) organization and is eligible to receive tax-deductible contributions under section 170(c)(2).

3.    The Addis Family Foundation

On October 10, 1997, petitioners established a fund within NHF called the Addis family foundation.  The purpose of the Addis family foundation is to fund Christian organizations and programs and individual evangelists.  Mrs. Addis paid $285 to NHF to establish the Addis family foundation.

4.    The Life Insurance Policy on Mrs. Addis

On October 10, 1997, petitioner wrote to Dr. J.T. Houk, the president of NHF, stating that the Addis family trust intended to buy an insurance policy on the life of Mrs. Addis and would grant NHF an option to acquire an interest in that policy.

On October 15, 1997, the Commercial Union Life Insurance Co. of America (Commercial Union Life) issued a life insurance policy on the life of Mrs. Addis (the life insurance policy or the policy) to petitioner.  Mrs. Addis was 44 years old at that time. Petitioners owned the policy through the Addis family trust.[2]

The life insurance policy had a $40,000 annual premium and an initial death benefit of $991,789.

_____

[2]  Petitioners possess rights in the insurance policy solely through the Addis family trust.

5.    The Death Benefit Option Agreement

On October 15, 1997, petitioner, as trustee of the Addis family trust, and NHF entered into a death benefit option agreement (DBOA)[3] relating to the life insurance policy on the life of Mrs. Addis.  Petitioner agreed to pay $4,000 of the $40,000 annual premium on the life insurance policy.  Petitioner and NHF agreed that, if NHF paid $36,000 of the annual premium, NHF would become entitled to $557,280 of the death benefit under that policy.  The DBOA provides that the Addis family trust and NHF each own a separate interest in the life insurance policy. The DBOA remained in effect throughout 1998.

6.    Petitioners' Payments to NHF and Commercial Union Life

Around November 12, 1997, petitioners sent a check for $36,000 to NHF for their family foundation.  Petitioner's letter to NHF stated that NHF was not required to use the payment to pay the premium on the life insurance policy, but that petitioner expected NHF to use the $36,000 payment to pay those premiums. On November 13, 1997, petitioners paid Commercial Union Life their $4,000 portion of the $40,000 annual premium.

On November 19, 1997, NHF credited $36,000 to the Addis family foundation account.  Simultaneously, NHF debited the Addis family foundation account $36,000 to pay NHF's portion of the

---

[3]  The DBOA is also referred to as a charitable split-dollar life insurance transaction.

life insurance policy premium. Also on that day, NHF paid its $36,000 portion of the life insurance policy premium to Commercial Union Life.

NHF sent a receipt for the 1997 contribution on behalf of the Addis family foundation which stated: "In accordance with IRS regulations, the National Heritage Foundation did not provide any goods or services to the donor in return for the contribution."

On October 21, 1998, petitioners paid $36,000 to NHF. The payment was in form unrestricted. Also on that day, petitioners paid Commercial Union Life their $4,000 portion of the life insurance policy premium. On October 27, 1998, NHF credited the Addis family foundation account with $36,000 and debited the account in the same amount to pay NHF's portion of the premium for the life insurance policy. Also on that day, NHF paid its $36,000 portion of the life insurance policy premium to Commercial Union Life. NHF provided petitioners with a receipt which stated that NHF provided no goods or services to petitioners in exchange for the payment.

Petitioners would have stopped making payments to NHF if NHF had not used petitioners' $36,000 payments to pay the premiums for the life insurance policy on Mrs. Addis.

7.  Rights Under the Commercial Union Life Insurance Policy

a.  NHF's Rights

The life insurance policy had an initial death benefit of $991,789.  Under the DBOA, NHF became entitled to $557,280 of that amount when it paid the $36,000 premium to Commercial Union Life in 1997.  NHF's portion of the death benefit was fixed at $557,280, even if the total death benefit increased under the policy.

Under the DBOA, NHF was guaranteed to receive either: (1) $557,280 when Mrs. Addis died; or (2) the termination account or cash surrender value of the insurance policy if the policy was terminated before Mrs. Addis died.  NHF was guaranteed to receive the termination account value upon termination of the policy, i.e., the cumulative amount of premiums paid by NHF, less the cumulative cost of insurance that NHF was charged for its share of the death benefit.

b.  The Addis Family Trust's Rights

In 1997, petitioners' family trust was entitled to receive $434,509[4] of the death benefit.  Under the DBOA, the Addis family trust could borrow against the life insurance policy only to the

---

[4]  Lawrence D. Cronin, the president of Cronin Insurance Services, testified that petitioners' family trust was entitled to receive $424,509.  The initial death benefit was $991,789. NHF was entitled to receive $557,280 of that amount, and petitioners' family trust was entitled to receive the remainder. The difference between $991,789 and $557,280 is $434,509.

extent that the policy's cash surrender value[5] exceeded the termination account value. The policy's cash surrender value did not exceed its termination account value during the years in issue.

Under the DBOA, as long as the annual premium of $40,000 was paid, the Addis family trust was entitled to receive a death benefit of $434,509 plus any increase in the death benefit from the initial death benefit of $991,789.

Under the DBOA, the Addis family trust was required to pay the premiums on the policy if the cumulative premiums were inadequate to fund NHF's cost of insurance.

8.   Enactment of Section 170(f)(10) in 1999

Petitioners stopped making payments to NHF after 1998. NHF no longer participates in charitable split-dollar life insurance arrangements because of the enactment in 1999 of section 170(f)(10),[6] which requires charities to pay a 100-percent excise tax on certain life insurance premium payments.

---

[5] A policy's cash surrender value is its total gross cash value less any surrender charges imposed by the insurer on the surrender of the policy.

[6] Sec. 170(f)(10) was added to the Code by sec. 537(a) of the Ticket to Work and Work Incentives Improvement Act of 1999, Pub. L. 106-170, 113 Stat. 1860, 1936, generally effective for transfers after Feb. 8, 1999.

C.   Petitioners' Tax Returns and the Notice of Deficiency

Petitioners claimed deductions for charitable contributions to NHF of $36,285 in 1997 and $36,000 in 1998.  Respondent determined in the notice of deficiency that petitioners are not entitled to those deductions.

OPINION

Respondent contends that (1) petitioners may not deduct any of their payments to NHF because petitioners received a benefit from NHF, and that (2) petitioners may not deduct any of their payments to NHF because petitioners did not comply with the substantiation requirement of section 170(f)(8) and section 1.170A-13(f)(6), Income Tax Regs.  Respondent contends that the contemporaneous written acknowledgment by NHF of petitioners' payments (1) incorrectly states that NHF provided no goods or services in exchange for petitioners' payments, and (2) contains no description or good faith estimate of the value of the benefits petitioners received.  To prevail on the charitable contributions issue, petitioners must overcome both of respondent's arguments.  We will first consider respondent's second argument.

A.   Substantiation Requirement Under Section 170(f)(8)

A taxpayer may not deduct any contribution of $250 or more unless he or she substantiates the contribution with a contemporaneous written acknowledgment of the contribution by the

donee organization that meets the requirements of section 170(f)(8)(B).[7]  Sec. 170(f)(8)(A).  The donee's written acknowledgment must state the amount of cash and describe other property contributed, indicate whether the donee organization provided any goods or services in consideration for the contribution, and provide a description and good faith estimate of the value of any goods or services[8] provided by the donee organization.  Sec. 170(f)(8)(B).

------

[7]  Sec. 170(f)(8) provides in part:

(A) General rule.--No deduction shall be allowed under subsection (a) for any contribution of $250 or more unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment of the contribution by the donee organization that meets the requirements of subparagraph (B).

(B) Content of acknowledgment.--An acknowledgment meets the requirements of this subparagraph if it includes the following information:

(i) The amount of cash and a description (but not value) of any property other than cash contributed.

(ii) Whether the donee organization provided any goods or services in consideration, in whole or in part, for any property described in clause (i).

(iii) A description and good faith estimate of the value of any goods or services referred to in clause (ii) * * *.

[8]  Goods or services include cash, property, services, benefits, and privileges.  Sec. 1.170A-13(f)(5), Income Tax Regs.

B.  Definition of Consideration Under Section 1.170A-13(f)(6), Income Tax Regs.

Petitioners contend that they did not receive consideration for, i.e., that they did not receive goods or services in exchange for, their $36,000 payments to NHF because NHF was not required to use those payments to pay the premiums on the life insurance policy.  Petitioners contend that the fact that they expected NHF to invest in the life insurance policy was not consideration for purposes of section 170(f)(8).  We disagree.

A donee organization provides goods or services in consideration for a taxpayer's payment if, at the time the donor makes the payment to the donee organization, the taxpayer receives or expects to receive goods or services in exchange for that payment.  Section 1.170A-13(f)(6), Income Tax Regs., provides:

> (6) In consideration for.  A donee organization provides goods or services in consideration for a taxpayer's payment if, at the time the taxpayer makes the payment to the donee organization, the taxpayer receives or expects to receive goods or services in exchange for that payment. * * *

Section 1.170A-13(f)(6), Income Tax Regs., is in keeping with the traditional view that a charitable contribution is one for which the donor has "'no expectation of any quid pro quo'". Hernandez v. Commissioner, 490 U.S. 680, 690 (1989) (quoting S. Rept. 1622, 83d Cong., 2d Sess. 196 (1954); H. Rept. 1337, 83d Cong., 2d Sess. A44 (1954) (the legislative history defines a

gift as a payment "made with no expectation of a financial return commensurate with the amount of the gift")); see also <u>United States v. Am. Bar Endowment</u>, 477 U.S. 105, 116, 118 (1985) ("The sine qua non of a charitable contribution is a transfer of money or property without adequate consideration.").

NHF used petitioners' $36,000 payments to pay the premiums on the life insurance policy, $434,509 (or 44 percent of the death benefits) of which petitioners' family trust was entitled to receive as beneficiary.

Petitioners point out that NHF was not required, and did not promise, to use their contributions to pay the premiums on the insurance policy on the life of Mrs. Addis.  However, NHF provided consideration for petitioners' payments because, at the time petitioners made payments to NHF, they expected to receive 44 percent of the death benefit under the policy.  Petitioners expected NHF to use their $36,000 contributions to pay NHF's portion of the premiums on the life insurance policy in 1997 and 1998.  Sec. 1.170A-13(f)(6), Income Tax Regs.  Petitioners' expectation that NHF would pay the premiums on the life insurance policy was reasonable because it was in NHF's financial interest to pay premiums on petitioners' life insurance policy in return for a guaranteed death benefit of $557,280.

C.  Whether NHF's Receipts for Petitioners' Payments Comply With Section 170(f)(8) and Section 1.170A-13(f)(6), Income Tax Regs.

Petitioners contend that NHF's receipts comply with section 170(f)(8) and were contemporaneous written acknowledgments of their contributions.  They further contend that the receipts were accurate because they received no benefits in exchange for their payments to NHF.  Petitioners' contention fails to take into account the definition of consideration in section 1.170A-13(f)(6), Income Tax Regs.  As stated above, under that regulation, a donee organization provides goods or services in consideration for a taxpayer's payment if, at the time the taxpayer makes the payment to the donee organization, the taxpayer receives or expects to receive goods or services in exchange for that payment.

NHF did not state in its receipts that NHF paid premiums for the insurance policy on the life of Mrs. Addis under which petitioners would receive 44 percent of the death benefits.  NHF failed to make a good faith estimate of the value of those benefits as required by section 170(f)(8)(B)(iii).

The legislative history accompanying the enactment of section 170(f)(8) states:  "Organizations * * * [that provide goods or services in consideration for payments from donors] often do not inform their donors that all or a portion of the amount paid by the donor may not be deductible as a charitable

contribution." H. Rept. 103-111, at 783, 785 (1993), 1993-3 C.B. 167, 359, 361. Congress enacted the substantiation requirements of section 170(f)(8) to require charitable organizations that receive quid pro quo contributions, i.e., payments made partly as a contribution and partly in consideration for goods or services provided to the donor by the donee organization, to inform their donors that the deduction under section 170 is limited to the amount by which the payment exceeds the value of goods or services provided by the charity. Id.

Petitioners and NHF designed a scheme purporting to provide no benefits to petitioners in exchange (or consideration) for petitioners' payments. However, petitioners received substantial benefits from NHF under the life insurance policy. In the documents structuring this transaction, petitioners and NHF avoided stating any obligation of NHF and made it appear that petitioners made an outright gift to NHF with no quid pro quo. However, petitioners expected, and they told NHF that they expected, NHF to use their contributions for both their and NHF's benefit.

Petitioners and NHF both had incentives to proceed under this scheme; with the pot sweetened by charitable contribution deductions, it was in both parties' interests (1) for NHF to continue to pay the insurance premiums, and (2) for petitioners to continue to make payments to NHF. NHF would be entitled to

the $557,000 death benefit only if it paid the premiums for the life insurance policy.  We conclude that the NHF receipts do not comply with the substantiation requirement of section 170(f)(8) and section 1.170A-13(f)(6), Income Tax Regs., because NHF incorrectly stated in the receipts that petitioners received no consideration for their payments.

D.   Consequence of Failure To Comply With Section 170(f)(8)

Section 170(f)(8) disallows a charitable contribution deduction in circumstances such as these, where the donee organization's contemporaneous written acknowledgment is erroneous and is not a good faith estimate of the value of goods or services it provided, and where the taxpayer unquestioningly and self-servingly uses that erroneous statement to claim a charitable contribution larger than the one to which he or she would be entitled under section 170.  Secs. 1.170A-13(f)(7), 1.170A-1(h)(4)(ii), Income Tax Regs.  The written acknowledgments by NHF did not meet the requirements of section 170(f)(8) and section 1.170A-13(f)(6), Income Tax Regs.  Thus, petitioners may not deduct their contributions to NHF of $36,285 in 1997 and $36,000 in 1998.

To reflect the foregoing,

Decision will be entered

for respondent.