T.C. Memo. 2002-153

UNITED STATES TAX COURT

GARY L. WEINER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7731-00.               Filed June 18, 2002.

<u>Steven R. Toscher</u>, for petitioner.

<u>David Holtz</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined deficiencies in petitioner's Federal income tax of $37,012 for 1997 and $33,373 for 1998.

Petitioner claimed charitable contribution deductions for his payment to the National Heritage Foundation (NHF) of $93,000 in 1997 and $93,000 in 1998, which NHF used to pay premiums on

life insurance policies for the lives of petitioner's daughter and son-in-law. The insurance policies were so-called charitable split-dollar life insurance contracts, under which NHF was entitled to receive from 48 percent to 92 percent of the initial death benefits, and petitioner's family trusts were entitled to receive from 8 percent to 52 percent of those benefits. Respondent determined that petitioner is not entitled to charitable contribution deductions for his payments to NHF.

The sole issue for decision is whether petitioner may deduct his payments to NHF as charitable contributions.[1] We hold that he may not.

Unless otherwise indicated, section references are to the Internal Revenue Code.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A. Petitioner

Petitioner, a dentist, resided in Los Angeles, California, when he filed the petition. Traci Rae Pontello and Wendi Lyn Iannaccone are petitioner's adult daughters, and Frank James Pontello is petitioner's son-in-law.

---

[1] Petitioner contends that sec. 7491(a) requires respondent to bear the burden of proof on all issues in the case. We need not decide petitioner's contention because our findings and analysis do not depend on which party bears the burden of proof.

B.  Petitioner's Family Trusts and Foundation

    1.  The Traci Rae Pontello Irrevocable Trust and the Frank
        James Pontello Irrevocable Trust

    On September 21, 1995, petitioner created the Traci Rae
Pontello Irrevocable Trust (TRP trust) and the Frank James
Pontello Irrevocable Trust (FJP trust).  Wendi Lyn Iannaccone was
trustee for the TRP trust, and Traci Rae Pontello was trustee for
the FJP trust.  Petitioner was the sole beneficiary of the TRP
and FJP trusts (the family trusts).  Under the trust instruments,
petitioner's daughters become beneficiaries of the family trusts
upon the death of petitioner.

    2.  NHF

    NHF is a section 501(c)(3) organization and is eligible to
receive tax-deductible contributions under section 170(c)(2).

    3.  The Gary Weiner Family Foundation

    On October 1, 1995, petitioner established a fund within NHF
called the Gary Weiner family foundation.  The purpose of the
Gary Weiner family foundation is to fund medical research and
other educational programs.  Petitioner paid $265 to NHF to
establish his foundation.

C.  The Charitable Split-Dollar Insurance Agreements

    On October 15, 1995, the family trusts and NHF entered into
split-dollar insurance agreements (SDIAs) to divide the death
benefits from the life insurance policies on the lives of Traci

Rae Pontello and Frank Pontello that would be issued to the family trusts. The SDIAs remained in effect through 1998.

In the SDIAs, the family trusts and NHF agreed that, if NHF paid about $93,000 of the annual premiums, NHF and the family trusts would become entitled to the following initial death benefits:

| Policy | Initial death benefit | NHF's portion of initial death benefit | Trusts' portion of initial death benefit | Trusts' percentage of initial death benefit |
|---|---|---|---|---|
| Western Reserve Life Assurance policy no. 01B0349122 (WRL 01B0349122) | $1,500,000 | $750,000 | $750,000 | 50 |
| Western Reserve Life Assurance policy no. 01B0349121 (WRL 01B0349121) | 1,700,000 | 820,000 | 880,000 | 52 |
| Bankers United Life Assurance policy no. B140145 (BUL B140145) | 819,672 | 750,000 | 69,672 | 8 |
| Bankers United Life Assurance policy no. B140146 (BUL B140146) | 1,307,531 | 820,000 | 487,531 | 37 |

The family trusts agreed to pay any premiums due on those insurance policies. The amounts of the death benefits payable to

NHF remain fixed at the various initial death benefit amounts even if the death benefits increased under the various policies.

Under the SDIAs, as long as the annual premiums were paid, the family trusts were entitled to receive death benefits in the amounts stated in the policies plus any increase in death benefits under the policies.

D.  The Insurance Policies on Petitioner's Daughter and Son-In-Law

On October 17 and 18, 1995, the TRP trust bought BUL B140146 and WRL 01B0349121 on the life of Traci Rae Pontello.  On October 17 and 18, 1995, the FJP trust bought BUL B140145 and WRL 01B0349122 on the life of Frank Pontello.

E.  Petitioner's Payments to NHF and to the Insurance Companies

Petitioner sent checks for $93,000 to NHF on November 30, 1995, October 24, 1996, October 23, 1997, and October 21, 1998. NHF was not obligated to use petitioner's funds to pay the premiums on the insurance policies on the lives of his daughter and son-in-law, but petitioner expected NHF to do so.  On the day that NHF received petitioner's payments, NHF paid to the insurance companies its $92,722 portion of the premiums for the life insurance policies on the lives of Traci Rae Pontello and Frank Pontello.  Each year from 1995-98, the trusts paid $7,278 to the insurance companies for premiums on those insurance policies.

NHF gave petitioner a receipt for each of his $93,000 payments in which NHF stated that "NHF did not provide any goods or services to the donor in return for the contribution."

F.    Petitioner's Tax Returns and the Notice of Deficiency

Petitioner claimed deductions for charitable contributions to NHF of $93,000 in 1997 and $93,000 in 1998.  Respondent determined in the notice of deficiency that petitioner is not entitled to those deductions.

## OPINION

Petitioner contends that he may deduct $93,000 in 1997 and 1998 as charitable contributions to NHF.  We disagree.

We recently decided Addis v. Commissioner, 118 T.C. ___ (2002), in which the taxpayers deducted their payments to NHF under a split-dollar life insurance plan.  The split-dollar life insurance plan in Addis is indistinguishable from the plan that petitioner used.  In Addis, NHF used the funds from the taxpayers to pay for life insurance on the life of Mrs. Addis and, as a result, the taxpayers' family trust became entitled to receive part of the death benefits from the life insurance policy.  In Addis, NHF gave the taxpayers receipts in which NHF stated that the taxpayers received no consideration in exchange for their payments.  We held that the taxpayers could not deduct the payments as charitable contributions because NHF did not state in the receipts for those payments that it used the taxpayers' funds

to pay for a life insurance policy under which the taxpayers would receive part of the death benefits.  We held that the taxpayers did not comply with the substantiation requirement of section 170(f)(8)[2] and section 1.170A-13(f)(6), Income Tax Regs.,[3] because NHF incorrectly stated in the receipts that the taxpayers received no consideration for their payments.  We reach

---

[2]  Sec. 170(f)(8) provides in part:

(A) General rule.--No deduction shall be allowed under subsection (a) for any contribution of $250 or more unless the taxpayer substantiates the contribution by a contemporaneous written acknowledgment of the contribution by the donee organization that meets the requirements of subparagraph (B).

(B) Content of acknowledgment.--An acknowledgment meets the requirements of this subparagraph if it includes the following information:

(i) The amount of cash and a description (but not value) of any property other than cash contributed.

(ii) Whether the donee organization provided any goods or services in consideration, in whole or in part, for any property described in clause (i).

(iii) A description and good faith estimate of the value of any goods or services referred to in clause (ii) * * *.

[3]  Sec. 1.170A-13(f)(6), Income Tax Regs., provides:

(6) In consideration for.--A donee organization provides goods or services in consideration for a taxpayer's payment if, at the time the taxpayer makes the payment to the donee organization, the taxpayer receives or expects to receive goods or services in exchange for that payment. * * *

the same conclusion here because the facts of this case and of Addis are indistinguishable.

As in Addis, NHF gave petitioner receipts for his payments which stated that NHF had not provided any goods or services to petitioner in return for those payments. Petitioner expected NHF to use his payments of $93,000 to pay NHF's portion of the premiums on the life insurance policies in 1997 and 1998 and thus expected his family trusts to receive a substantial part of the death benefits under the policies. NHF failed to make a good faith estimate of the value of those benefits as required by section 170(f)(8)(B)(iii).

Petitioner's contention that his expectation that NHF would pay the premiums on the life insurance policies was not consideration under section 170(f)(8) fails to take into account the definition of consideration in section 1.170A-13(f)(6), Income Tax Regs. A donee organization provides goods or services in consideration for a taxpayer's payment if, at the time the taxpayer makes the payment to the donee organization, the taxpayer receives or expects to receive goods or services in exchange for that payment. Id.

Petitioner's daughters, rather than petitioner, were the trustees of the family trusts. In contrast, in Addis, the taxpayers were the trustees. Like the taxpayers in Addis,

petitioner expected that he would benefit from his payments to NHF.  Just as in <u>Addis</u>, NHF used petitioner's money to pay the premiums on the life insurance policies under which petitioner or his daughters, through the family trusts, were entitled to receive a substantial part of the death benefits.

As in <u>Addis</u>, petitioner's failure to comply with section 170(f)(8) results in disallowance of his charitable contribution deductions.  Thus, petitioner may not deduct his contributions to NHF of $93,000 in 1997 and $93,000 in 1998.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.