CHARLES R. IRBY AND IRENE IRBY, ET AL.,[1] PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos.  7559–10, 7561–10,       Filed October 25, 2012.
7562–10.

Ps are members of an LLC which conveyed conservation
easements encumbering two parcels of land (one conveyance
in 2003 and the other in 2004) to COL, a qualified organiza-
tion as defined in I.R.C sec. 170(h)(3), in bargain sale trans-
actions. The purchase portion of the transactions was funded
with grants from Federal, State, and county agencies which
were established to assist in the conservation of open land.
The LLC reported gain with respect to the sale portion and
a charitable contribution with respect to the remaining por-
tion (the bargain portion) of the transactions. Ps reported
their respective shares of the gain and deducted their respec-
tive shares of the charitable contributions on their respective
individual tax returns for years 2003 and 2004. In disallowing
the charitable contribution deductions Ps claimed for the bar-
gain portion of the transactions, R determined that: (1) the
conservation purpose for the easements was not protected in
perpetuity because COL was required to reimburse the
funding government agencies in the event it received proceeds
should the land to which the easements relate be condemned
and the easements extinguished; (2) Ps' appraisal report was

[1] Cases of the following petitioners are consolidated herewith: Stanley W. Irby and Bonnie S.
Irby, docket No. 7561–10; and Dale Irby and Wendy M. Irby, docket No. 7562–10.

not a "qualified appraisal" because the report did not include statements that the appraisal was prepared for income tax purposes; and (3) Ps did not obtain contemporaneous written acknowledgments from COL indicating the amount of goods or services that Ps received for the contribution. *Held*: The conservation purpose of the easements was protected in perpetuity. *Held*, *further*, Ps' appraisal report met the requirements of a qualified appraisal as required by sec. 1.170A–13(c)(3)(ii)(G), Income Tax Regs. *Held*, *further*, Ps obtained the contemporaneous written acknowledgment of the transactions required by I.R.C. sec. 170(f)(8).

*Larry D. Harvey*, for petitioners.

*Luke D. Ortner*, *Robert A. Varra*, and *Sara Jo Barkley*, for respondent.

## OPINION

JACOBS, *Judge*: Charles Irby, Irene Irby, Dale Irby, and Stanley Irby (sometimes referred to as the Irbys or petitioners) are members of Irby Ranches, LLC, a Colorado limited liability company that elected to be taxed as a partnership for 2003 and 2004. As discussed in greater detail *infra*, Irby Ranches, LLC, conveyed to Colorado Open Lands, a "qualified organization" as defined in section 170(h)(3), two conservation easements: one in 2003 which encumbered approximately 197 acres of land and a second in 2004 which encumbered approximately 456 acres of land. The easements placed on the use of the property a variety of limitations that served to protect the relatively natural habitat for fish, wildlife, and plants and to preserve open space and agricultural resources (conservation purposes). The easements were granted to Colorado Open Lands as part of a bargain sale transaction.[2] Irby Ranches, LLC, reported gains with respect to the sale portion of the transaction and charitable contributions with respect to the remaining portion of the transaction on Forms 1065, U.S. Return of Partnership Income, which it timely filed for tax years ended December 31, 2003 and 2004. On their respective Federal income tax returns for 2003 and 2004 the Irbys each reported their respective shares of the gain and deducted their respective portions of the charitable

---

[2] A bargain sale is a transfer of property which is in part a sale or exchange of the property and in part a charitable contribution as defined in sec. 170(c). Sec. 1.170A–4(c)(2)(ii), Income Tax Regs.

contributions.[3] Respondent disallowed the claimed charitable contribution deductions, determining the purported contributions failed to meet all the requirements of section 170.[4]

Pursuant to an agreement between counsel for petitioners and counsel for respondent submitted to the Court on November 3, 2011, a trial was held on November 30, 2011, in Denver, Colorado, to resolve the following issues: (1) whether the specific terms and conditions of the deeds of conservation easement (deeds) comply with section 170(h)(5) and section 1.170A–14(g)(6), Income Tax Regs., which determine whether the conservation purpose of a conservation easement is protected in perpetuity; (2) whether petitioners obtained a qualified appraisal as required by section 1.170A–13(c)(3), Income Tax Regs.; and (3) whether petitioners complied with the substantiation requirements of section 170(f)(8).

In addition to disallowing the claimed charitable contribution deductions for failure to meet the requirements of section 170, the notices of deficiency included a number of other issues that were reserved for subsequent proceedings.

## *Background*

Some of the facts are stipulated and are so found. We incorporate by reference the stipulation of facts and the attached exhibits. Petitioners resided in Colorado at the time they filed their respective petitions.

## I. *The Donation of Irby Ranch*

Irby Ranches, LLC, operates the Irby Ranch, which is approximately 24 miles east of Gunnison, Colorado. The property has been owned and operated as a cow-calf ranch since 1942, and the Irby family has owned and operated ranches in the area for four generations. As of December 31, 2003, the Irby Ranch lands consisted of cattle pasture and hay meadows. All of the land was used for agricultural purposes at the time of trial.

---

[3] At all relevant times Charles Irby was married to Irene Irby, Dale Irby was married to Wendy Irby, and Stanley Irby was married to Bonnie Irby. Charles Irby and Irene Irby filed joint Federal income tax returns for 2003 and 2004; Dale Irby and Wendy Irby filed joint Federal income tax returns for 2003 and 2004; and Stanley Irby and Bonnie Irby filed joint Federal income tax returns for 2003 and 2004. Dale Irby and Stanley Irby are the children of Charles Irby and Irene Irby.

[4] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times.

In 1999 the residents of the Gunnison Valley became interested in maintaining the rural nature of the area. The community as a whole began looking into conservation easements as an avenue to protect the area's farms and ranchlands. Residents, including the Irbys, began conversations with conservationists, and together they determined they could use conservation easements to provide some protection of the ranchlands in the area as well as provide a source of funding for ranchers who desired payment for agreeing to an easement.

Petitioners approached Colorado Open Lands to discuss Irby Ranches, LLC's conveying a conservation easement on its property. Their discussions led to Irby Ranches, LLC's granting options to Colorado Open Lands on September 26, 2003, to purchase conservation easements on two parcels of land pursuant to bargain sale transactions. A minimal amount (i.e., $10) was the stated consideration for each option. Colorado Open Lands exercised both options. Thereafter, Irby Ranches, LLC, conveyed to Colorado Open Lands a conservation easement under an instrument recorded on December 10, 2003, with the Clerk and Recorder of Gunnison County, Reception No. 537437, which encumbered the western portion of the Irby Ranch (west Irby parcel). On June 10, 2004, Irby Ranches, LLC, conveyed a second conservation easement to Colorado Open Lands under an instrument executed on June 10, 2004, and recorded on June 16, 2004, with the Clerk and Recorder of Gunnison County, Reception No. 543071, which encumbered the eastern portion of the Irby Ranch (east Irby parcel).

Funding for each easement was through grants from three governmental agencies: (1) the Farm and Ranch Lands Protection Program (FRPP) of the Natural Resources Conservation Service (NRCS), an agency of the U.S. Department of Agriculture (USDA); (2) Great Outdoors Colorado (GOCO), a voter-created trust fund organization of the State of Colorado; and (3) the Gunnison County Land Preservation Board. The amount paid for the west Irby parcel easement in 2003 was $268,224.75, and $537,468.75 was paid for the east Irby parcel easement in 2004.

FRPP contributed $176,381 for the 2003 west Irby parcel easement and $358,312 for the 2004 east Irby parcel easement. GOCO contributed $89,191 for the 2003 west Irby

parcel easement and $119,583 for the 2004 east Irby parcel easement. The Gunnison Land Preservation Board contributed $33,006 for the 2003 west Irby parcel easement and $119,583 for the 2004 east Irby parcel easement.[5] The excess of the amounts contributed by the three governmental agencies over the amounts paid for the easements was used for settlement and legal charges as well as a grant to Colorado Open Lands.

Both deeds contained substantially the same restrictions. The easements were exclusively for conservation purposes and protected the properties in perpetuity. The deeds allowed for the continuation of agricultural operations in a manner consistent with a conservation plan prepared in consultation with the NRCS (which gave the NRCS the right to enter the property to monitor compliance with the plan). If agricultural operations on the properties were to cease, the land could not be converted to nonagricultural uses. The deeds prohibited commercial timber harvesting; mining; exploitation of gas, oil, and geothermal resources; and commercial and non-commercial recreation, except for certain low-impact uses such as hunting, outfitting, and bird watching, and imposed restrictions on the exploitation of the land's water rights and on the use of motor vehicles. The deeds also banned subdivisions, industrial activity, or the establishment of feedlots.[6] Colorado Open Lands was authorized to enter both the east and west Irby parcels in order to monitor compliance with the terms of the easements and, if necessary, to enforce the restrictions.

The deeds provided that Colorado Open Lands could transfer the easements to any public agency or private nonprofit organization that, at the time of transfer, was a qualified organization as defined by section 170(h), but only if the recipient expressly agreed to assume the responsibility imposed on Colorado Open Lands by the deeds.

An appraisal petitioners and Colorado Open Lands commissioned (discussed more fully *infra*) determined that the value of the easement on the west Irby parcel was 63%

[5] Additionally, the Gunnison Ranchland Conservation Legacy, a Colorado nonprofit corporation, facilitated the transactions by assisting petitioners with the application process for the funding of the easements.

[6] A feedlot is a permanently constructed confined area or facility which is used exclusively for the feeding of livestock.

of the full fair market value of the property as unencumbered by the easement on the date the easement was first recorded. The same appraisal determined that the value of the easement on the east Irby parcel was 60% of the full fair market value of the property as unencumbered by the easement on the date the easement was first recorded. The amounts paid to Irby Ranches, LLC, for the easements were below market value as set forth in the appraisal.

If the land were ever to be condemned, paragraph 12 of each of the deeds provided that the amount paid to the grantee (i.e., Colorado Open Lands) would be equal to the easement value percentage multiplied by the amount of the proceeds resulting from the disposition of the land. Specifically, following condemnation of the land, Colorado Open Lands would receive 63% of the price paid for the west Irby parcel easement and 60% of the price paid for the east Irby parcel easement. However, paragraph 13 of the deed to the west Irby parcel provides:

The Board [of GOCO] shall be entitled to receive twenty-one percent (21%) of Grantee's compensation, which figure is equal to that portion of the Board's grant attributable to the fair market value of the Easement (the "Board's Proceeds"). The United States shall be entitled to receive fifty percent (50%) of Grantee's compensation, which figure is equal to that portion of the United States' funds attributable to the fair market value of the Easement (the "United States' Proceeds"). The Gunnison Valley Land Preservation Board shall be entitled to receive four percent (4%) of the net proceeds of condemnation or sale of the Property, which is equal to that portion of its grant attributable to the purchase price for the Property. Grantee shall remit promptly to the above parties their respective shares of the proceeds.

Accordingly, although Colorado Open Lands would receive the value of the easement should the land be condemned or the easement otherwise extinguished, after making the required reimbursements to the three governmental agencies that funded the bargain purchase, Colorado Open Lands would retain 25% of the proceeds resulting from the disposition of the easement on the west Irby parcel.

Paragraph 13 of the east Irby parcel deed is similar. Specifically, it provides that the Board of GOCO would receive 13% of Colorado Open Lands' compensation, the United States would receive 50%, and the Gunnison Valley Land Preservation Board would receive 12%. Accordingly, Colorado

Open Lands would retain 25% of the proceeds resulting from the disposition of the easement on the east Irby parcel.

## II. *The Appraisal of Irby Ranch*

Arnold Butler was engaged to appraise both the east Irby parcel and west Irby parcel easements. At the time Mr. Butler had been an independent real estate appraiser for over 35 years and had appraised between 75 and 100 conservation easements in Gunnison County. The valuation date of his report was August 29, 2003. At the time of his engagement Mr. Butler understood that the east and west Irby parcel easements were being appraised in connection with a bargain sale to Colorado Open Lands, which was a below-market sale, *see supra* note 2, and that there would be Federal income tax effects. Consequently, the appraisal includes the following:

The purpose of the easement as quoted from the proposed Deed of Conservation Easement is:

The purpose (the "Purpose") of this Easement is to preserve and protect in perpetuity the Conservation Values of the Property. This Purpose is in accordance with s170(h) of the Internal Revenue Code. In order to achieve this purpose, Grantor intends to convey this Deed to Grantee to ensure that the Conservation Values of the Property will be preserved and protected forever.

Mr. Butler's report provided a historic and geographic overview of Gunnison County, Colorado, descriptions of both the east and west Irby parcels, descriptions of the easements, and a discussion regarding how the easements created a severe encumbrance to the highest and best use of the land, which was subdivision for residential properties. The report stated that the properties would be appraised using fair market value as defined by the Uniform Standard of Appraisal Practice.[7] The appraisal report then discussed several valuation methods and explained why the sales comparison valuation method was being used. Using the sales comparison valuation method, the report determined both the value of the unencumbered property, on the basis of the

---

[7] This method relies on a hypothetical situation whereby (1) the buyer and seller are both typically motivated; (2) both parties are informed and act in their own best interests; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of comparable financial arrangements; and (5) the price represents normal consideration of the property sold unaffected by special or creative circumstances.

sales of 11 similar, local unencumbered properties, and the value of the property as encumbered by the easements, on the basis of the sales of 13 similar, local properties encumbered by conservation easements. [8]

Mr. Butler prepared two addenda reports (addenda), one for the east Irby parcel easement and the other for the west Irby parcel easement, using valuation dates of December 4, 2003, and May 3, 2004, respectively. Inasmuch as the characteristics of the two parcels generally remained unchanged, Mr. Butler incorporated in the addenda the property descriptions, basis data descriptions, and valuation analyses set forth in his original appraisal report. Nonetheless Mr. Butler conducted a new investigation and analysis of current market conditions and by doing so concluded that the values set forth in the original reports remained valid. He briefly detailed his valuation analyses in the addenda. Mr. Butler drafted the addenda to comply with section 1.170A–13(c)(3)(i)(A), Income Tax Regs., which requires that a qualified appraisal be completed within 60 days of the date the property is contributed. The addenda stated that the east and west Irby parcels had not changed in value during the intervening time. [9]

Petitioners timely filed their respective 2003 and 2004 Federal income tax returns. Attached to petitioners' respective 2003 and 2004 returns was a Form 8283, Noncash Charitable Contributions, drafted by Mr. Butler. On the 2003 Form 8283 Mr. Butler wrote that the donated property consisted of a conservation easement, that petitioners received $268,224.75 in a bargain sale transaction, and that they claimed $89,408.25 as a charitable contribution deduction. On the 2004 Form 8283 Mr. Butler wrote that petitioners received $537,468.75 in a bargain sale transaction for the conservation easement but did not claim any amount as a charitable contribution deduction. In fact, petitioners

---

[8] The report discusses the similarities and differences among the comparable unencumbered and encumbered properties as well as similarities and differences between them and the west and east Irby parcels, and adjustments to the sale prices of the comparable properties were made to reflect these differences.

[9] We note that the original appraisal report was labeled as being completed for both Irby Ranches, LLC, and Lucy High, executive director of the Gunnison Ranchland Conservation Legacy, whereas the addenda were completed solely for Lucy High. At trial Mr. Butler explained that the name "Irby Ranches, LLC" was inadvertently left off of the addenda.

claimed, in the aggregate, $165,576.21 as deductions on their 2004 income tax returns.

## *Discussion*

### I. *Introduction*

Section 170(a)(1) provides that generally a taxpayer may deduct any charitable contribution only if the contribution is verified under regulations prescribed by the Secretary. Although section 170(f)(3) does not generally permit a deduction for a charitable gift of property consisting of less than the donor's entire interest in that property, section 170(f)(3)(B)(iii) provides an exception for a "qualified conservation contribution". A qualified conservation contribution is a contribution of (1) a "qualified real property interest," (2) to a "qualified organization", (3) which is made "exclusively for conservation purposes". Sec. 170(h)(1); *see also* sec. 1.170A–14(a), Income Tax Regs. All three requirements must be met for a donation to qualify as a qualified conservation contribution.

Respondent challenges petitioners' deductions on the following grounds: (1) the contributions were not made exclusively for conservation purposes because that conservation purpose of the contributions was not protected in perpetuity; and (2) petitioners failed to meet certain recordkeeping requirements, specifically that they failed to obtain (a) a qualified appraisal, and (b) a contemporaneous written acknowledgment.

### II. *Protection of the Conservation Purpose of the Easements in Perpetuity*

A contribution is made exclusively for conservation purposes only if it meets the requirements of section 170(h)(5). *Glass v. Commissioner*, 124 T.C. 258, 277 (2005), *aff'd*, 471 F.3d 698 (6th Cir. 2006). Section 170(h)(5)(A) provides that "A contribution shall not be treated as exclusively for conservation purposes unless the conservation purpose is protected in perpetuity." Section 1.170A–14(g)(1), Income Tax Regs., provides that, in general, for the conservation purpose of the donation to be enforceable in perpetuity, the "interest in the property retained by the donor * * * must be subject to legally enforceable restrictions * * * that will prevent

uses of the retained interest inconsistent with the conservation purposes of the donation."

Even with the strictest protections, the possibility exists that an unexpected change in the conditions surrounding the property may make it impossible or impractical to continue the use of the property for conservation purposes. Thus, section 1.170A–14(g)(6)(i), Income Tax Regs., provides that the conservation purposes will continue to be treated as protected in perpetuity if the restrictions limiting the use of the property for conservation purposes "are extinguished by judicial proceeding and all of the donee's proceeds * * * from a subsequent sale or exchange of the property are used by the donee organization in a manner consistent with the conservation purposes of the original contribution."

Section 1.170A–14(g)(6)(ii), Income Tax Regs., provides in relevant part:

for a deduction to be allowed under this section, at the time of the gift the donor must agree that the donation of the perpetual conservation restriction gives rise to a property right, immediately vested in the donee organization, with a fair market value that is at least equal to the proportionate value that the perpetual conservation restriction at the time of the gift bears to the value of the property as a whole at that time. * * * Accordingly, when a change in conditions gives rise to the extinguishment of a perpetual conservation restriction under paragraph (g)(6)(i) of this section, the donee organization, on a subsequent sale, exchange, or involuntary conversion of the subject property, must be entitled to a portion of the proceeds at least equal to that proportionate value of the perpetual conservation restriction * * *.

Respondent posits that these requirements are violated by paragraph 13 of each respective deed because Colorado Open Lands was obligated to "remit promptly" the bulk of the proceeds received from the extinguishment of the easements to the NRCS, GOCO, and the Gunnison Valley Land Preservation Board. Continuing, respondent asserts that Colorado Open Lands' obligation to repay the grant money used to fund the sale portion of the bargain sale upon extinguishment of the easements means that Colorado Open Lands' entitlement to the proceeds is merely "superficial" and consequently Colorado Open Lands was not entitled to its required share of the extinguishment proceeds as set forth in the regulations. We disagree.

The matter before us presents issues not previously decided by this Court. The grantee conservation organization, Colorado Open Lands, acquired the east and west Irby parcel easements by way of a bargain purchase with funds provided by Federal, State, and local entities. In receiving funds to purchase the easements, Colorado Open Lands became obligated to repay the funding government entities in the event the easements were extinguished. We must therefore determine whether Colorado Open Lands' obligation to repay the governmental entities, i.e., the NRCS, GOCO, and the Gunnison Valley Land Preservation Board, results in a failure by Colorado Open Lands to receive its proportionate share of any extinguishment proceeds.

We are satisfied that were the easements to be extinguished, Colorado Open Lands would receive its proportionate share of the extinguishment proceeds. Pursuant to the respective deeds, the donor (i.e., Irby Ranches, LLC, and its members) unconditionally agreed that in the event of a change in conditions giving rise to the extinguishment of either or both of the conservation easements, Colorado Open Lands would be entitled to an amount at least equal to its proportionate share of the proceeds arising from the extinguishment of the conservation easement. *See Wall v. Commissioner*, T.C. Memo. 2012–169, 2012 WL 2286373, at *2.

In cases involving a conservation easement where we determined that the regulation's requirements were not met and thus denied the claimed charitable contribution deduction, the grantee organization had been prevented by the deeds themselves from receiving the full proportionate value of the extinguishment proceeds. *See id.*, 2012 WL 2286373, at *3–*4. The funds diverted by the deeds were used to further the donor taxpayer's interests. For example, in *Wall*, the deed of conservation easement provided that if the property was condemned, the grantee conservation organization would be entitled to the easement's proportionate value, but only after any claim of a mortgagee was satisfied. Hence, the first use of the extinguishment proceeds was to further the donor taxpayer's interest in repaying the mortgage on the property, with the grantee conservation organization's receiving only a residual amount of money. *Id.*; *see also Mitchell v. Commis-*

*sioner*, 138 T.C. 324 (2012); *1982 East, LLC v. Commissioner*, T.C. Memo. 2011–84.

Our conclusions in those cases (i.e., denying the deduction) reflect the purpose of the regulation. The Court of Appeals for the First Circuit noted:

paragraph (g)(6) appears designed in case of extinguishment both (1) to prevent taxpayers from reaping a windfall if the property is destroyed or condemned and they get the proceeds from insurance or condemnation and (2) to assure that the donee organization can use its proportionate share of the proceeds to advance the cause of historic preservation elsewhere. [Fn. ref. omitted.]

*Kaufman v. Shulman*, 687 F.3d 21, 26 (1st Cir. 2012), *aff'g in part, vacating in part and remanding in part Kaufman v. Commissioner*, 136 T.C. 294 (2011), *and* 134 T.C. 182 (2010).

No such diversion of extinguishment proceeds from Colorado Open Lands would occur—Colorado Open Lands holds an absolute right to the condemnation proceeds vis-a-vis Irby Ranches, LLC, and petitioners. There is no risk that Irby Ranches, LLC, or petitioners could ever reap a windfall should the east Irby and/or west Irby parcels be condemned. Significantly, any extinguishment proceeds which Colorado Open Lands is obligated to pay to others will go to governmental entities, each of which is an organization described in section 170(c)(1). The proceeds so paid by Colorado Open Lands would be used by those entities in a manner consistent with the original conservation purposes of the contribution by Irby Ranches, LLC. *See infra* pp. 383–385. We therefore find that the deeds of conservation easement meet the requirements of section 1.170A–14(g)(6)(ii), Income Tax Regs.

Respondent's concerns more properly seem to address the question of whether petitioners have satisfied section 1.170A–14(g)(6)(i), Income Tax Regs., i.e., whether all of the extinguishment proceeds would be used by Colorado Open Lands in a manner consistent with the conservation purposes of the original contribution.

We are mindful that while some conservation easements are gratuitously donated, others, such as the east and west Irby parcel easements, are acquired through bargain sale transactions. Because the Irbys required some cash consideration for the easements, Colorado Open Lands would not

have been able to further the desired conservation purpose derived by its obtaining and holding the east and west Irby parcel easements were it unable to receive government funding.

Daniel Pike, the president of Colorado Open Lands, testified that the reimbursement provisions included in the governmental grants were not negotiable. Indeed the USDA's regulations require that such reimbursement provisions be included in all deeds recording conservation easements funded by the FRPP. *See* 7 C.F.R. sec. 1491.30(f) (2003). [10] Both GOCO and the Gunnison County Land Preservation Board impose similar requirements on easements funded by their grants. Colorado Open Lands, and through it petitioners, was essentially in a "take it or leave it" situation. If Colorado Open Lands had not agreed to the reimbursement requirements, it would not have been able to purchase the east and west Irby parcel easements.

The receipt of reimbursed funds by the NRCS, GOCO, and the Gunnison County Land Preservation Board furthers the conservation purpose of the original contribution. All three of these governmental agencies were established to assist in the conservation of open land, and all three agencies are legally obligated to fulfill their conservation purpose. The operation of the FRPP by the NRCS is governed by Federal regulations, specifically 7 C.F.R. secs. 1491.1 through 1491.32 (2012). Title 7 C.F.R. sec. 1491.2 provides that the NRCS will establish policies to meet the goals of the FRPP; fund conservation easements; coordinate with the USDA office of general counsel to ensure the legal efficiency of cooperative agreements with local conservationists and ensure the legal validity of the deeds of easement; monitor compliance; and provide leadership for establishing, implementing, and overseeing administrative processes for easements, easement payments, and administrative and financial performance reporting. Moreover, we are mindful that the deeds provide that the NRCS would consult with petitioners and Colorado Open Lands to develop conservation plans for the east and west Irby parcel easements and that the NRCS held the right to enter the properties to monitor compliance with these plans.

---

[10] Tit. 7 C.F.R. sec. 1491.30(e) (2012) provides the current reimbursement requirement.

GOCO was established by article XXVII of the Colorado constitution. Colo. Const. art. XXVII, sec. 1, provides that the net proceeds of every State-supervised lottery game are to be guaranteed and permanently dedicated to the preservation, protection, enhancement, and management of the State's wildlife, park, river, trail, and open space heritage. GOCO was established to implement these goals. GOCO's funding is governed by Colo. Const. art. XXVII sec. 4, which provides that all moneys deposited in the GOCO trust fund are to remain in trust for the purposes set forth in article XXVII and that no part thereof is to be used or appropriated for any other purpose, nor made subject to any other tax, charge, fee, or restriction. The remaining sections of article XXVII govern the operation of GOCO.

The Gunnison Valley Land Preservation Board was formed in 1997 and is primarily a funding source for the land trusts and conservation organizations active in Gunnison County. It was created by a ballot measure that established a multijurisdictional sales tax pool that raises over $230,000 per year that is used as leverage for other funding sources such as GOCO funds. In 2002 the voters of the county approved a ballot measure that allows the Land Preservation Board to borrow up to $1 million against the sales tax revenue contribution. *See* Board of County Commissioners of Gunnison County Resolution No. 97–53 (Sept. 2, 1997); www.gunnisoncounty.org/gis__maps__comprehensive__plans __cbgc__agriculture.html (last visited Oct. 22, 2012).

We do not share respondent's fear that the "policies and intentions do not require either the parties or their successors in interest to use the proceeds for the conservation purposes of the West and East Parcel Easements." We are convinced that these institutions and their respective employees will fulfill their obligations under Federal, State, and local laws. Indeed, it appears to us that reimbursement under the terms of the deeds of conservation easement would enhance the ability of the NRCS, GOCO, and the Gunnison County Land Preservation Board to conserve and protect more land, since the reimbursed funds would be used to do just that.

We therefore find that including the reimbursement provision in the respective deeds of conservation easement is consistent with the conservation purpose of the original contribution and satisfies the requirements of section 1.170A–

14(g)(6)(i) and (ii), Income Tax Regs. In sum, the contribution by Irby Ranches, LLC, which flowed through to petitioners was made exclusively for conservation purposes and meets the requirements of section 170(h)(5).

III. *Qualified Appraisal*

The Deficit Reduction Act of 1984 (DEFRA), Pub. L. No. 98–369, sec. 155(a), 98 Stat. at 691, provides that taxpayers claiming a deduction under section 170 must obtain a "qualified appraisal" for any property contributed and attach an "appraisal summary" to the return on which the deduction is first claimed. DEFRA sec. 155(a)(4), 98 Stat. at 692, provides that a qualified appraisal must include: (A) a description of the property appraised; (B) the fair market value of such property on the date of contribution and the specific basis for the valuation; (C) a statement that such appraisal was prepared for income tax purposes; (D) the qualifications of the qualified appraiser; (E) the signature and TIN of such appraiser; and (F) such additional information as the Secretary prescribes in regulations. In 2004 Congress codified these off-Code requirements and added additional provisions by enacting the American Jobs Creation Act of 2004, Pub. L. No. 108–357, sec. 883(a), 118 Stat. at 631. This public law added to the Code section 170(f)(11), which governs qualified appraisal and other documentation for certain contributions, effective for contributions made after June 3, 2004. The provisions added by section 170(f)(11) do not affect our determination in this matter.

Pursuant to the authority of DEFRA sec. 155(a)(1), the Secretary promulgated section 1.170A–13(c), Income Tax Regs., which disallows a deduction for a noncash contribution of $5,000 or more unless the claiming taxpayer meets specific substantiation requirements. One such requirement is that the taxpayer obtain a qualified appraisal and attach a fully completed appraisal summary to the tax return on which he/she first claims a deduction for the contribution. Sec. 1.170A–13(c)(2)(i), Income Tax Regs. Section 1.170A–13(c)(3)(ii), Income Tax Regs., provides that a qualified appraisal must include 11 categories of information to be a valid qualified appraisal. Respondent challenges only one such category; respondent asserts that the appraisal petitioners rely upon

does not meet the requirement of section 1.170A–13(c)(3)(ii)(G), Income Tax Regs., that the appraisal contain "A statement that the appraisal was prepared for income tax purposes". [11] Respondent argues that the appraisal and addenda to appraisal Mr. Butler drafted do not include such a statement and consequently they are unreliable because there is no assurance that Mr. Butler applied the proper standards of care to ensure that the reports conformed to Internal Revenue Service (IRS) standards. We disagree.

On other occasions we have considered whether the appraisal the taxpayer relied upon was a "qualified appraisal" as defined in section 1.170A–13(c)(3), Income Tax Regs. In *Simmons v. Commissioner*, T.C. Memo. 2009–208, *aff'd*, 646 F.3d 6 (D.C. Cir. 2011), the Commissioner asserted that the taxpayer's appraisal was not qualified because it (1) failed to adequately describe the properties contributed; (2) failed to accurately describe the method of valuation used; (3) did not provide the dates of contribution; and (4) did not include a statement that the appraisal was prepared for income tax purposes. We therein found that the appraisal report met all of the regulation's requirements and was therefore a qualified appraisal. With respect to the income tax purpose statement, we stated:

Although the appraisals did not contain an explicit statement that they were prepared for income tax purposes, the appraisals did contain statements that the owner of the parcels (petitioner) was contemplating donating conservation easements to L'Enfant [the grantee]. The appraisals also include discussions of IRS practice and cases of this Court concerning facade easements. The dates of contribution were likewise included on petitioner's tax returns. The Forms 8283 that petitioner included with her returns required an acknowledgment by the donee, L'Enfant.

Like the appraisal report in *Simmons*, the appraisal report in this case included all of the required information either in the appraisal or in the appraisal summaries attached to petitioners' respective returns—it included a discussion of the purpose of the transaction (i.e., that the purpose of the appraisal was to value the donation of a conservation easement pursuant to the terms of section 170(h)), *see supra* p. 377; it stated that fair market valuation was to be used in

---

[11] Respondent raised other issues regarding Mr. Butler's appraisal in his pretrial memorandum. These arguments were not pursued in his brief. We therefore deem these issues to be conceded.

determining the value of the property; and Form 8283 was properly filed with petitioners' respective returns.[12] The IRS has not provided to the public a specific form for the tax purpose statement, and respondent has not proffered any instance where a suboptimal tax purpose statement, by itself, invalidated an otherwise qualified appraisal. In sum, we find the appraisal's income tax purpose statement petitioners rely upon to be adequate.

## IV. *Contemporaneous Written Acknowledgment*

Section 170(f)(8)(A) provides that a taxpayer must obtain a contemporaneous written acknowledgment from the donee organization for a contribution of $250 or more. Section 170(f)(8)(B) provides that the acknowledgment so required must include (i) the amount of cash and a description (but not value) of any property other than cash contributed; (ii) whether the donee organization provided any goods or services for the donated property, and (iii) a description and good-faith estimate of the value of any goods or services provided by the donee organization. Section 1.170A–13(f)(5), Income Tax Regs., provides that goods or services includes cash, property, services, benefits, and privileges. The contemporaneous written acknowledgment requirement was enacted to require charitable organizations to inform their donors that if there is a contribution that is partly a donation and partly for goods or services provided to the donor by the donee organization, the donor's deduction under section 170 is limited to the amount by which the donation exceeds the value of the goods or services provided by the charity. *Addis v. Commissioner*, 118 T.C. 528, 536 (2002), *aff'd*, 374 F.3d 881 (9th Cir. 2004). Section 170(f)(8)(C) provides that the acknowledgment must be obtained by the earlier of the date the return is filed or its due date. The contemporaneous written acknowledgment "need not take any particular form. Thus, for example, acknowledgments may be made by letter, postcard, or computer-generated forms." H.R. Conf. Rept. No. 103–213, at 565 n.32 (1993), 1993–3 C.B. 393, 443. If the

---

[12] Form 8283 includes a jurat to be signed by the appraiser which states: "Furthermore, I understand that a false or fraudulent overstatement of the property value as described in the qualified appraisal or in this appraisal summary may subject me to penalty under IRC sec. 6701(a)." Sec. 6701(a) provides for a penalty when a person aids or assists with the presentation of any portion of a tax return, affidavit, claim, or other document that is prepared for income tax purposes.

donee organization provides no goods or services to the taxpayer in consideration of the taxpayer's contribution, the written substantiation must include a statement to that effect. *Id.* n.30.

Petitioners assert that the following documents, taken in their totality, constitute contemporaneous written acknowledgment:

1. the Option Agreements for the Purchase of Conservation Easement, dated September 26, 2003, in which Irby Ranches, LLC, received cash consideration totaling $20 for its granting Colorado Open Lands the options to purchase the conservation easements;

2. the Forms 8283 attached to petitioners' respective 2003 and 2004 income tax returns which disclosed the cash petitioners received in the bargain sale transaction, the basis of the property, and the amount claimed as a deduction arising from the donation of the property. And the attached form was signed by the president of Colorado Open Lands;

3. letters from Colorado Open Lands to Stanley Irby, dated January 21 and December 7, 2004, respectively, in which Colorado Open Lands states that (a) it is a qualified organization within the definition of section 170(h), and (b) it will receive and hold the deeds of conservation easement with respect to the east and west Irby parcels;

4. the settlement statements prepared by First Gunnison Title and Escrow, Inc., the title company in the transaction, which list the amounts paid as part of the bargain sale. Two settlement statements were drafted, one for the east Irby parcel easement and one for the west Irby parcel easement. The west Irby parcel easement statement was signed by Stanley Irby on behalf of Irby Ranches, LLC, as seller and by Daniel Pike, president of Colorado Open Lands, and Gary Finland of the NRCS on behalf of the Government of the United States. The east Irby parcel easement statement was signed by Stanley Irby on behalf of Irby Ranches, LLC, as seller and by Gary Finland on behalf of the Government of the United States; and

5. the deeds for the east Irby parcel easement and the west Irby parcel easement, respectively, which (a) state the properties were acquired in part though cash grants from the U.S. Government through the NRCS, GOCO, and the Gunnison Valley Land Preservation board, (b) describe the property

donated, and (c) list the responsibilities and rights that the donors and donees possess regarding the enforcement of the easement.

Petitioners assert that collectively the aforementioned documents disclose (1) the description of the east and west Irby parcels, (2) that the donee organization, Colorado Open Lands, provided $268,224.75 in cash in consideration for the west Irby parcel easement and $537,468.75 in cash in consideration for the east Irby parcel easement, and (3) Colorado Open Lands would provide a specific list of services to support and maintain the conservation easements. Moreover, the documents were created before petitioners filed their respective income tax returns.

Replying, respondent argues that none of the documents individually contains sufficient information to constitute a contemporaneous written acknowledgment. However, respondent does not assert, and we have found no authority to indicate, that the contemporaneous written acknowledgment may not be made up of a series of documents. We thus find that, collectively, the documents petitioners provided constitute a contemporaneous written acknowledgment. The deeds of conservation easement with respect to the east and west Irby parcel easements provide precise descriptions of the property being contributed;[13] the Option Agreement and the settlement statements set forth the amounts of cash that was paid to petitioners in consideration of the donated property;[14] the letters from Colorado Open Lands state that it is a qualified organization; and the Form 8283 provides that petitioners may deduct only the part of the value of the easement that is not covered by the bargain sale.

Respondent asserts that none of petitioners' documents contains a statement that no services were provided by the donee organization. While respondent's assertion is correct, such a statement in the written acknowledgment is required only "[i]f the donee organization provided *no goods or services*

_____

[13] We note that we have held in cases where the property is simply donated to the grantee that the deeds themselves may constitute contemporaneous written acknowledgments. *See Averyt v. Commissioner*, T.C. Memo. 2012–198; *Simmons v. Commissioner*, T.C. Memo. 2009–208, *aff'd*, 646 F.3d 6 (D.C. Cir. 2011).

[14] Respondent argues that because the east Irby parcel easement settlement statement is only signed by Gary Finland on behalf of the Government of the United States, it is not truly an acknowledgment by the donee. We reject respondent's position. We are convinced that the Government of the United States represents the donee's interest with respect to the acknowledgment.

to the taxpayer in consideration of the taxpayer's contribution". H.R. Conf. Rept. No. 103–213, *supra* at 565 n.30, 1993–3 C.B. at 443 (emphasis added). Since this was a bargain sale transaction, goods were provided (in the form of cash) and that fact was disclosed on the option agreement and the settlement statements. *See* sec. 1.170A–13(f)(5), Income Tax Regs. ("[g]oods or services means cash, property,"). Accordingly, we hold that petitioners have satisfied the requirements of section 170(f)(8) with respect to donation of the conservation easement.

## V. *Conclusion*

On the basis of the foregoing, we conclude that (1) the terms and conditions of the conservation easement deeds comply with the requirements of section 170(h)(5) and section 1.170A–14(g)(6), Income Tax Regs., and that the conservation purpose for the contribution of the conservation easements on the east and west Irby parcels is protected in perpetuity; (2) petitioners obtained a qualified appraisal as required by section 1.170A–13(c)(3), Income Tax Regs.; and (3) petitioners complied with the substantiation requirements of section 170(f)(8). In furtherance of the November 3, 2011, agreement between respective counsel for the parties, a trial will be held with respect to all remaining issues.

*An appropriate order will be issued.*